TIMOTHY HURLEY *vs.* COMMONWEALTH.

PATRICK J. GOUGH *vs.* SAME.

Suffolk.　March 29, 30, 1905. — June 21, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, & BRALEY, JJ.

*Contempt. Error, Writ of. Practice, Criminal,* Contempt, Sentence. *Words,* "Criminal case."

A formal presentation to the court signed by a sworn prosecuting officer is a sufficient verification of facts constituting a constructive criminal contempt to justify judicial action.

Under R. L. c. 193, § 9, and R. L. c. 156, § 3, a writ of error from this court lies to reverse a judgment of the Superior Court punishing a criminal contempt of court consisting of an offer to influence and corrupt jurors sitting in the trial of a case.

Under R. L. c. 166, § 13, providing that commitments for contempt of court may be made to any jail in the Commonwealth, a criminal contempt of court cannot be punished by imprisonment in the house of correction. R. L. c. 220, § 5, does not apply to a case of contempt.

KNOWLTON, C. J. These are writs of error brought by two persons, each of whom in the Superior Court was found guilty of contempt of court and sentenced to be punished by imprison-

ment in the house of correction, Hurley "for the term of eighteen months at hard labor" and Gough "for the term of one year at hard labor." The first question before us is whether a writ of error lies in such a case. The general rule at common law does not permit a proceeding for contempt to be revised by a higher court upon an appeal or writ of error. In *Yates's case*, 4 Johns. 317, 369, Chief Justice Kent, stating the rule and referring to the *Earl of Shaftsbury's case*, 1 Mod. 144, said in conclusion, "The court in that case, seem to have laid down a principle from which they never have departed, and which is essential to the due administration of justice. This principle, that every court, at least of the superior kind, in which great confidence is placed, must be the sole judge, in the last resort, of contempts arising therein, is more explicitly defined, and more emphatically enforced, in the two subsequent cases of *The Queen* v. *Paty and others*, and of *The King* v. *Crosby.*" In *Vilas* v. *Burton*, 27 Vt. 56, 60, 61, we find language of Chief Justice Redfield as follows: "Proceedings for contempt in one court . . . are not revisable in any other court. . . . If it be said that a power to punish at discretion is a dangerous power to trust to a single magistrate, however high, we can only say, it is one which the law of England has always seen fit to repose there, . . . and one which, in these times, ordinarily, is very little liable to abuse." Similar statements of the law are found in many other opinions. See *In re Debs*, 158 U. S. 564, 595; *In re Nevitt*, 117 Fed. Rep. 448; *Tyler* v. *Hamersley*, 44 Conn. 419; *State* v. *Towle*, 42 N. H. 540; *In re Cooper*, 32 Vt. 253; *Watson* v. *Williams*, 36 Miss. 331; *Johnston* v. *Commonwealth*, 1 Bibb, 598; *Williamson's case*, 26 Penn. St. 9, 20; *Ex parte Martin*, 5 Yerg. 456; Rapalje, Contempts, § 141. But in many of the States statutes have been passed which have been construed to authorize appeals or writs of error in proceedings for contempt, and the tendency of judicial decision, in recent years, has been to open for revision rulings on questions of law in this class of cases as well as in others. In this Commonwealth the question whether a writ of error will lie never has been decided, although a case of this kind was entertained without question of the jurisdiction by counsel, or formal consideration of it by the court. *Telegram Newspaper Co.* v. *Commonwealth*, 172 Mass.

294. This case hardly can be considered a binding authority, inasmuch as the plaintiff in error was held to have no standing on the merits, and the result did not depend upon the right of the court to take jurisdiction. But the fact that jurisdiction was assumed without question is significant of the general view of the justices, even though the question was not raised.

If we have jurisdiction of these cases, it is under the R. L. c. 193, § 9, which is as follows: "A judgment in a criminal case may be re-examined and reversed or affirmed upon a writ of error for any error in law or in fact." The provision of R. L. c. 156, § 3, is broad and sweeping, in these words: "The Supreme Judicial Court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided "; etc.

It is contended that the words, "judgment in a criminal case " were not intended to include a sentence to punishment for a contempt of court, and it certainly is doubtful whether the Legislature had in mind a case of this kind. A proceeding for contempt is not a criminal case in the sense that all the provisions of our statutes in regard to criminal practice and procedure are applicable to it. But contempts of court are often classified as criminal and civil, and while the line of division between these two classes is not easily definable, since civil contempts often include elements of wrong which are peculiarly characteristic of criminal contempts, it is universally recognized that an offence, committed directly against the authority and dignity of the court, as distinguished from mere disobedience of an order made for the benefit of a party, is therefore called a criminal contempt. The punishment of such an offence is solely for the vindication of public authority and the majesty of the law. In general, the proceedings leading up to the punishment should be in accordance with the principles which govern the practice in criminal cases. In a broad sense, the prosecution of such an offender is a criminal case, and the sentence to punishment is a judgment. Considering together the statutes quoted above, we are of opinion that we do no violence to the general purpose of the Legislature, in holding that a sentence to punishment for a distinctively criminal contempt is a judgment in a criminal case, which may be re-examined upon a writ of error.

The first error alleged in the proceedings is that the matter was not properly brought before the court, since no affidavit was filed as a foundation for further proceedings. A prosecution for contempt of court is *sui generis*. It calls for the exercise by the court of its summary power to punish for conduct tending to obstruct or degrade the administration of justice. This power is inherent in the superior courts, because it is essential to the execution of their orders and the maintenance of their authority, and it has been recognized and used from the earliest times. If a contempt is committed in the presence of the judge, no complaint or process is necessary to give the court jurisdiction of the offender, but the court may act upon its judicial knowledge, and the contemnor may be taken into custody at once. If the contempt, instead of being direct, is indirect and constructive, knowledge of it should first be brought to the court in a way to justify formal action. This is usually by an affidavit setting forth the facts of which complaint is made. While most of the technical requirements of criminal statutes have no application, the hearing should be had with due regard for the rights of the accused, and in view of the fact that, if found guilty, he may be subjected to criminal punishment. The proper procedure is, therefore, closely analogous to that in ordinary criminal cases.

In the present case the proceedings were begun by a formal complaint to the court, made by the first assistant district attorney of Suffolk County in his official capacity. He is one of the prosecuting officers of the court, duly sworn to the proper performance of his official duties. While the making of a complaint of this kind is not required of him by any statute, it is in the general line of the duties which he is regularly performing. A complaint of this kind, signed by him as a public officer, may fairly be said to carry with it the sanction of his oath of office. In the absence of a statute or of an established rule of law requiring that in all cases the complaint itself shall be sworn to, we think the matter was brought to the attention of the court with such support and assurance of its verity as justified the issuance of process and the subsequent hearing. In *Welch* v. *Barber*, 52 Conn. 147, 157, the court said, in reference to the inauguration of proceedings for a contempt of this kind: "The proper course

is for some informing officer to bring it to the attention of the court." So in *Ex parte Wright*, 65 Ind. 504, 508, and *State* v. *Ackerson*, 1 Dutch. 209, 211, it was said that the court might act upon the official return of a public officer. Assuming, as we do, that a statement of a constructive criminal contempt should be properly verified before action is taken upon it by a court, we are of opinion that a formal presentation, by a sworn prosecuting officer, is a sufficient verification to justify judicial action. See *Cartwright's case*, 114 Mass. 230 ; *State* v. *Frew*, 24 W. Va. 416, 469 ; *Ex parte Moore*, 63 N. C. 397 ; *State* v. *Morrill*, 16 Ark. 384.

The next contention of the plaintiffs in error is, that the facts found by the presiding judge do not constitute contempt of court, and that the complaint does not charge a crime. Each of the plaintiffs was adjudged guilty of contempt of court, in that he " did wilfully and corruptly approach Edward F. McClennen, an attorney at law, then engaged in the trial of said causes of Atkins and Snow against the City of Boston, and did wickedly and corruptly offer to influence and corrupt some of the jurors, then sitting in the trial of said causes, and did solicit and endeavor to procure said McClennen to give and offer to said jurors through them, the said Hurley and Gough, gifts and gratuities of money, with intent thereby to corrupt said jurors as aforesaid and to influence the decision of said cases." This was a very gross and wicked attempt to interfere with the administration of justice in court, and was a contempt which deserved severe punishment. It was an attempt at bribery of persons in an important position of trust. Contempts of this kind are most dangerous assaults upon the integrity of our courts in the trial of cases. It is inconceivable that any court would treat such an offence as anything less than a criminal contempt of the gravest character. See *Cuddy, petitioner*, 131 U. S. 280 ; *Little* v. *State*, 90 Ind. 338 ; *Bradley* v. *State*, 111 Ga. 168, 174; *Langdon* v. *Wayne Circuit Judges*, 76 Mich. 358.

The last contention of the plaintiffs in error is that the sentences were illegal, inasmuch as they directed imprisonment in the house of correction instead of in the jail. The warrants of commitment, in terms, directed that this should be at hard labor, in that respect going beyond the language, although perhaps not

beyond the legal effect of the judgment. The statutory provision for such cases is found in the R. L. c. 166, § 13, in these words: "Commitments for contempt of court may be made to any jail in the Commonwealth." This is the only statute which deals directly with the subject, and we are of opinion that it is exclusive of any other general provision. The authority given in R. L. c. 220, § 5, to sentence to imprisonment in the house of correction when one is convicted of a crime punishable wholly or in part by imprisonment in the jail, does not apply to a case of contempt of court, which is not a crime punishable in any particular way. Apart from the contention of the counsel of the plaintiffs that a punishment of a year and a half in the house of correction, to which one of the plaintiffs in error was sentenced, is an infamous punishment, which cannot be imposed under the Constitution without trial by jury, in regard to which we express no opinion, we think that this part of the sentence was erroneous. The general practice, both in England and in the United States, has been to sentence to the jail, when imprisonment is ordered in this class of cases. Indeed, in the absence of any statute, it has been held that imprisonment at hard labor is illegal. *Rogers Manuf. Co.* v. *Rogers,* 38 Conn. 121. *In re Fil Ki,* 80 Cal. 201.

Under the R. L. c. 193, § 12, "If a final judgment is reversed by reason of error in the sentence, such judgment shall be rendered in the case as the court below should have rendered, or it may be remanded for that purpose to said court." The judgment should be reversed, and the case remanded to the Superior Court for a change of the sentence, as to the place of confinement, from the house of correction to the jail.

<em>So ordered.</em>

*O. Storer,* (*J. F. Adams* with him,) for the plaintiffs in error.

*F. H. Nash,* Assistant Attorney General, for the Commonwealth.