EDMUND L. DOLAN *vs.* COMMONWEALTH.

Suffolk.    November 18, 1938. — November 28, 1939.

Present: FIELD, C.J., DONAHUE, LUMMUS, & QUA, JJ.

*Error, Writ of. Contempt. Practice, Criminal,* Proceedings for contempt, Jury trial, Sentence. *Pleading, Criminal,* Complaint, Bill of particulars. *Agency,* What constitutes. *Conspiracy. Jury and Jurors.*

Evidence at a hearing on the merits in the Superior Court resulting in a judgment of criminal contempt properly was not included in the record returned by that court upon a writ of error to review the judgment.

The oath of an alleged contemnor is not a bar to his prosecution for criminal contempt.

Particulars which the defendant in a complaint for criminal contempt, not committed in the presence of the court, is entitled as of right to have from the Commonwealth are only such as, together with the allegations of the complaint, satisfy the requirement that he be so advised of the charges against him as to have a reasonable opportunity to meet them.

A complaint for criminal contempt, setting forth in several numbered paragraphs statements as to alleged conduct of the defendant tending to obstruct the proper administration of justice through solicitation of jurors, was construed, not as setting forth separate acts of contempt in successive counts, but as charging a single contempt through a course of action, each numbered paragraph containing an element thereof; and motions to expunge and to quash a paragraph dealing solely with a conspiracy with others to do such acts properly were denied.

The several averments of a complaint for criminal contempt, setting forth in numbered paragraphs a course of action as a single contempt, although they stated acts of the defendant in conspiracy with others and also acts through others as agents as well as individual acts on his part, were not mutually inconsistent or open to the objection of uncertainty, and a motion that the complaint be quashed as an entirety properly was denied.

A coconspirator may be the agent of another coconspirator.

One accused of criminal contempt has no right to a trial by jury on that charge.

A request to rule that "corrupting a juror or jurors does not by itself constitute an obstruction to the court in the performance of its duty" properly was denied at the hearing of a complaint charging criminal contempt of court.

The provisions of G. L. (Ter. Ed.) c. 268, § 13, making it a crime to corrupt or attempt to corrupt a juror with intent to influence his decision do not preclude criminal contempt proceedings in the Superior Court based on acts described in the statute.

A sentence of two and one half years' confinement in the common jail upon conviction of contempt of court in a course of conduct tending to obstruct the course of justice through attempted corruption of jurors was not excessive or unreasonable.

On a writ of error, only matters assigned as error by the plaintiff in error are open for consideration.

PETITION, filed in the Supreme Judicial Court for the county of Suffolk on May 27, 1938, and afterwards amended, for a writ of error.

The case was reserved and reported by *Dolan*, J.

*E. M. Dangel*, (*T. F. Callahan & L. E. Sherry* with him,) for the plaintiff in error.

*E. O. Proctor*, Assistant Attorney General, for the Commonwealth.

FIELD, C.J. A writ of error issued from the Supreme Judicial Court, upon a petition brought therefor by the plaintiff in error (see G. L. [Ter. Ed.] c. 250, §§ 1, 2, 9–13), to reëxamine a judgment entered in the Superior Court, whereby the plaintiff in error was sentenced to be confined

in the common jail for a contempt of which he had been adjudged guilty. A single justice of this court reserved and reported the case (see G. L. [Ter. Ed.] c. 211, § 6; *Liggett Drug Co. Inc. v. License Commissioners of North Adams*, 296 Mass. 41, 44, and cases cited) "upon the petition and assignment of errors as amended, the writ of error, plea [*in nullo est erratum*], writ of *scire facias* and the record and process herein filed of the Superior Court for the transaction of criminal business in Suffolk County, for the consideration of the full court." The writ of error addressed to the Chief Justice of the Superior Court commanded him to "distinctly and openly send us the record and process of the suit aforesaid, with all things touching them." The Chief Justice filed a return containing, as he certified, such record and process "with all things touching the same." But no transcript of the evidence taken at the trial on the merits was sent to the Supreme Judicial Court. The single justice further reported as follows: ". . . when the cause came before me the plaintiff in error brought forward a motion that 'suitable process' issue to the end that a transcript of the evidence taken at the trial on the merits in the court below be made a part of the record; that I denied the motion subject to the exception of the plaintiff in error, and that it is agreed that if the denial of the motion was error, a duly authenticated transcript of the evidence before referred to may be presented to the full court for its consideration."

The record of the Superior Court embodied in the return of the Chief Justice discloses that sentence was imposed upon the plaintiff in error in the following terms: "It was therefore considered by said court that said Dolan, for his contempt, be punished by confinement in the common jail, in said county of Suffolk, there to be kept according to the rules of the same for the term of two and one-half years, and that he stand committed until he be removed in pursuance of said sentence." See G. L. (Ter. Ed.) c. 220, § 14. The order of the court adjudging the plaintiff in error in contempt, as the record shows, was in these terms: "EDMUND L. DOLAN, the Court adjudges you in contempt for that you knowingly, wilfully and with intent to obstruct

and interfere with the course of justice did enter upon and follow a course of action which had a tendency unlawfully to obstruct and interfere with said course of justice and which in fact did so obstruct and interfere with said course of justice, in that you did conspire with Robert Dinsmore and J. Walter Quinn to corrupt and influence unlawfully in their capacities as jurors persons duly serving as such in this court at a time when it was possible that some or all of them would be drawn to sit in the trial of indictments in which you, Edmund L. Dolan, and said J. Walter Quinn were charged with having committed crimes; and in that by means and in pursuance of said conspiracy you did offer bribes to certain of said jurors and did give bribes to certain of said jurors and did unlawfully solicit certain of said jurors, and all to the end that they should in your behalf corruptly and unlawfully act contrary to their oaths and duties as jurors if they should be accepted to sit in such trial; and in that by means and in pursuance of said conspiracy you did succeed in making impossible a fair trial of said indictments at the time set therefor."

Whatever may have been the common law it is established that under existing statutes (see G. L. [Ter. Ed.] c. 211, § 3; c. 250, § 9) "a sentence to punishment for a distinctively criminal contempt is a judgment in a criminal case, which may be re-examined upon a writ of error." *Hurley* v. *Commonwealth,* 188 Mass. 443, 445. *Blankenburg* v. *Commonwealth,* 260 Mass. 369, 374–375. No contention is made that a writ of error does not lie in this case. The question for determination upon this writ of error is whether in the trial of the case on its merits error was committed in respect to any matters as to which error is assigned. Preliminary to this question, so far as certain assignments of error are concerned, is the further question reported by the single justice of this court, in substance, whether it was error for him to deny the motion of the plaintiff in error that "'suitable process' issue to the end that a transcript of the evidence taken at the trial on the merits in the court below be made a part of the record." For convenience the plaintiff in error, who was the defendant in

the Superior Court, is referred to herein as the defendant, and the Superior Court as the trial court.

The course of proceedings in the trial court as disclosed by copies of documents and a copy of the docket entries therein embodied in the return of the Chief Justice was as follows: A complaint for contempt against the defendant was filed for the Commonwealth by the assistant district attorney on April 20, 1938. This complaint alleged that there were pending in the Suffolk Superior Criminal Court four indictments against the defendant, and that on March 21, 1938, the indictments were set down for trial for Monday, April 18, 1938. The complaint contained further allegations in paragraphs numbered 3, 4, and 5, set out in a footnote.* The complainant in the fifth paragraph of the complaint "complains that the conduct of the said Edmund L. Dolan," as set forth in the complaint, "tended to interfere with, impede and obstruct the proper administration of justice and constituted contempt of this Honorable Court." The complainant prays that due process be issued

---

* The complaint in its third paragraph alleged that "subsequent to March 21, 1938," the defendant and six other persons "conspire[d] . . . to influence and to corrupt the jurors who had been duly drawn, qualified and subject to service in the trial" of these cases "by soliciting the said jurors with intent wilfully, wrongfully and illegally to influence the decision of said jurors in the aforesaid cases, and by giving and offering to give the said jurors gifts and gratuities, with intent wilfully, wrongfully and illegally to influence the decision of said jurors in the aforesaid cases, and with intent to impede and obstruct the due administration of justice," and that the defendant and the six other persons agreed mutually to inform each other as to the progress that was being made. The complaint alleged in its fourth paragraph that the defendant "did hire, retain and solicit" five of said persons "to solicit said jurors with intent wilfully, wrongfully and illegally to influence the decision of said jurors in the aforesaid cases, and to give and offer to give the said jurors gifts and gratuities, with intent wilfully, wrongfully and illegally to influence the decision of said jurors in the aforesaid cases, and with the intent to impede and obstruct the due administration of justice," and that these five persons "did agree to solicit and did solicit said jurors with intent wilfully, wrongfully and illegally to influence the decision of said jurors in the aforesaid cases, and did agree to give and offer to give, and did give and offer to give the said jurors gifts and gratuities with intent wilfully, wrongfully and illegally to influence the decision of said jurors in the aforesaid cases, with intent to impede and obstruct the due administration of justice." The complaint further alleged in its fifth paragraph that the defendant and six other persons "did wilfully, wrongfully and illegally attempt to influence and corrupt the decision of said jurors in said cases, as aforesaid, and did influence and corrupt said jurors, as aforesaid; and further did inform each other of the progress and results obtained in their said attempts to influence the decisions of said Jurors, as aforesaid, in their attempts to corrupt said jurors, as aforesaid, and in their attempts to impede and obstruct the due administration of justice, as aforesaid."

to bring the defendant before the court and show cause why he should not be adjudged in contempt.

The defendant filed a "motion for bill of particulars," to which the Commonwealth filed answers. The defendant filed a "motion for further particulars," which was denied in part and allowed in part. The Commonwealth filed answers to the motion as allowed. The substance of these answers is set forth in a footnote.* The defendant filed a motion that the court "order the complainant to file interrogatories to the defendant," a motion to quash paragraph numbered 3 of the complaint for the reasons that "1. It does not set forth any criminal contempt. 2. It is clearly insufficient to sustain a judgment against the defendant," a motion that said paragraph 3 be expunged for the same reasons, and a motion to quash the complaint for the reason that it "charges the accused disjunctively, so as to leave it uncertain what is relied on as the accusation against him." These motions were denied and the defendant excepted.

The defendant filed a sworn answer to the complaint, and, at the trial, made a motion for trial by jury which was denied. The return sets out about seventy requests by the defendant for rulings with notations of the action of the court thereon, and also sets out a request by the defendant "that the court report this case to the Supreme Judicial Court for its determination."

---

* In the answers to the motions for particulars the time and place of the formation of the conspiracy were stated to be on or about March 21, 1938, in Suffolk County, and the other acts were stated to have occurred since March 21, 1938, in said county. It was stated that oral solicitation of the jurors was contemplated, and that the gifts and gratuities contemplated, agreed upon and actually made or offered to the jurors were "money." It was stated also that the defendant hired, retained and solicited others named in the complaint "by personal contact and contacts through agents and mutual acquaintances," that the defendant and others named in the complaint agreed to solicit the jurors, gave or offered to give to them gifts or gratuities, and attempted to influence and corrupt their decision substantially by like contacts, and that the decision of the jurors and the arrangement made with jurors receiving gifts or gratuities were for the purpose of influencing their decision to render verdicts of not guilty for the defendant and Quinn. The names of jurors "allegedly solicited," "allegedly offered gifts or gratuities," "allegedly influenced and corrupted," and the names of jurors to whom, according to statements of persons named in the complaint, it was agreed that gifts or gratuities should be given were stated in the answers, together with the further words, in each instance, "and twelve others whose names are unknown to the complainant." The name of another juror whom the defendant attempted to influence and corrupt was also given.

1. There was no error in the denial by the single justice of the defendant's motion that "'suitable process' issue to the end that a transcript of the evidence taken at the trial on the merits in the court below be made a part of the record." Denial of this motion was in accordance with the settled law of this Commonwealth relating to writs of error in cases of criminal contempt, as stated in *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 377, that evidence "heard at the trial on the merits is no part of the record and hence cannot be considered on a writ of error." See also *Blankenburg* v. *Commonwealth*, 272 Mass. 25, 28, 33. In the first Blankenburg case it was sought not only by suggestions of diminution of the record, but also by a writ of certiorari to have brought before the Supreme Judicial Court the evidence at the trial of the proceeding for criminal contempt, but the single justice ruled adversely, and the full court said that "The ruling that the plaintiff was not entitled to a writ of certiorari was right. The evidence heard at the trial before the judge is no part of the record in the case even though it was taken stenographically by a commissioner. . . . Certiorari is not designed in any event to secure a report of evidence. Such report would be an encumbrance and no part of the record." Page 377. The remark in *Woodbury* v. *Commonwealth*, 295 Mass. 316, 319 — where review upon a writ of error was sought in a case of criminal contempt — that the "record does not disclose the evidence presented at the trial of the contempt proceedings in the Superior Court" cannot rightly be regarded as casting doubt upon the proposition settled in the earlier case. This remark shows merely recognition of the fact that the evidence was not included in the record and does not import that this evidence could rightly have been so included. It does not differ in significance from the remark in *Blankenburg* v. *Commonwealth*, 272 Mass. 25, 33: "The evidence on which the findings were made is no part of this record. We do not know what it was."

The conclusion stated in *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 377, already quoted, was reached after an extended examination of the law governing writs of error

in cases of criminal contempt and is in accord with the nature of the remedy. It was there declared that the principle prevails in this Commonwealth that at common law "no court reviewed the proceedings of another court in contempt matters," (see also *Hurley* v. *Commonwealth*, 188 Mass. 443, 444; *Bessette* v. *W. B. Conkey Co.* 194 U. S. 324, 330), but that review upon a writ of error was authorized by what is now G. L. (Ter. Ed.) c. 250, § 9, providing that a "judgment in a criminal case may be re-examined and reversed or affirmed upon a writ of error for any error in law or in fact," read in connection with what is now G. L. (Ter. Ed.) c. 211, § 3, conferring upon the Supreme Judicial Court "general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided," and to "issue writs of error . . . to such courts . . . necessary to the furtherance of justice and to the regular execution of the laws." Pages 374–375. See *Hurley* v. *Commonwealth*, 188 Mass. 443, 444–445. Moreover, it was recognized that the statutory authorization of review upon writ of error of a sentence of punishment for criminal contempt carries with it the ordinary incidents, and is subject to the ordinary limitations, of a writ of error and, consequently, that a "matter of fact once tried and established [in a proceeding for criminal contempt] by a tribunal having jurisdiction cannot be retried by writ of error." And it was pointed out that an error of fact in a judgment which may be reviewed upon a writ of error under G. L. (Ter. Ed.) c. 250, § 9, "does not refer to errors as to findings of fact made at a trial," but refers "to matters of fact not heard and decided at the trial under review." Pages 376–377.

The provisions now embodied in G. L. (Ter. Ed.) c. 211, § 3, and c. 250, § 9, have remained substantially unchanged since they appeared respectively in Rev. Sts. c. 81, §§ 4, 5, and c. 82, § 31, and in the intervening period they have several times been reënacted (see Gen. Sts. c. 112, § 3; Pub. Sts. c. 150, § 3; R. L. c. 156, § 3; Gen. Sts. c. 146, § 12; Pub. Sts. c. 187, § 8; R. L. c. 193, § 9), presumably with the legislative intention of continuing the provisions in force with the judicial interpretations given them before such

reënactments. *Nichols* v. *Vaughan*, 217 Mass. 548, 551. *Kelly* v. *Morrison*, 231 Mass. 574, 577. With respect to the sections in Rev. Sts. c. 81 and related sections it was said by Chief Justice Shaw in *Commonwealth* v. *Cummings*, 3 Cush. 212, 214, that these statutes "are to be taken in connection with various other legislative provisions, directing when, how, and in what cases, appeals may be taken and prosecuted, exceptions filed, writs of error, *habeas corpus*, *certiorari*, *mandamus*, and the like, sued out, as of right, or granted on application." See also *Peters* v. *Peters*, 8 Cush. 529, 538. *Commonwealth* v. *Scott*, 123 Mass. 418, 420. And it is provided by G. L. (Ter. Ed.) c. 250, § 2, applicable to writs of error in both civil and criminal cases, in form substantially unchanged since Rev. Sts. c. 112, § 15, that the proceedings upon such writs as to certain specific matters "and all other matters not expressly provided for, shall be according to the course of the common law as modified by practice and usage in the commonwealth and by the general rules of the supreme judicial court." *Eliot* v. *McCormick*, 141 Mass. 194. *Conto* v. *Silvia*, 170 Mass. 152, 154. *Commonwealth* v. *Marsino*, 252 Mass. 224, 228. *Lee* v. *Fowler*, 263 Mass. 440, 443. The interpretation of what is now G. L. (Ter. Ed.) c. 250, § 9, as authorizing review "upon a writ of error" of a sentence for punishment for criminal contempt as a "judgment in a criminal case" imports that the proceedings upon such a writ of error shall conform to the provisions of the related section, which is now G. L. (Ter. Ed.) c. 250, § 2. G. L. (Ter. Ed.) c. 211, § 3, does not justify a different conclusion.

A party seeking, as does the defendant, relief by writ of error under the statutory authority therefor must take the remedy with its limitations. And in proceedings upon a writ of error in a case of criminal contempt, as upon a writ of error in other criminal cases, as well as in civil cases, conformity to the provisions of G. L. (Ter. Ed.) c. 250, § 2, precludes inclusion in the record of the trial of the case on the merits of the evidence introduced at such trial. That such evidence is not a part of the record that can be examined on a writ of error was recognized by this court as early as the

decision in *Storer* v. *White*, 7 Mass. 448. See also *Peirce* v. *Adams*, 8 Mass. 383. Even then this had long been characteristic of writs of error at common law. See Holdsworth's History of English Law, vol. I, pages 215–216. And this rule was recognized in *Commonwealth* v. *Cummings*, 3 Cush. 212, 215, where it was pointed out that "even by the aid of a writ of error, the material questions of law, raised and decided on the trial of a criminal prosecution . . . [cannot] be brought before this court, because they would not appear upon the record." See also *Tyndale* v. *Stanwood*, 186 Mass. 59, 61–63. Moreover, in other forms of review evidence is not a part of the record unless made so by some specific statutory provision, as for example, in the case of criminal appeals (see G. L. [Ter. Ed.] c. 278, § 33A), or unless such evidence is incorporated in the record by some authorized method, as, for example, by a bill of exceptions. See *De Propper, petitioner*, 236 Mass. 500, 501, and cases cited. See also *Nashua & Lowell Railroad* v. *Boston & Lowell Railroad*, 169 Mass. 157, 161. Compare *Farmington River Water Power Co.* v. *County Commissioners*, 112 Mass. 206, 212; *Swan* v. *Justices of the Superior Court*, 222 Mass. 542, 545–546.

It is urged, in substance, in behalf of the defendant, that a different rule relating to the scope of the record that would permit a broader review, including review of the evidence, should be followed in cases of criminal contempt, for the reason that no other method of review is available. But at common law, as already pointed out, there was no review of a sentence to punishment for criminal contempt, though it is not to be assumed that relief could not have been had upon a writ of habeas corpus if the tribunal was without jurisdiction to commit for contempt. See *Emery's Case*, 107 Mass. 172; *Sennott's Case*, 146 Mass. 489, 492; *Morton's Case*, 196 Mass. 21. Moreover, at "common law there was no review of criminal cases as of right. Due process does not comprehend the right of appeal, *McKane* v. *Durston*, 153 U. S. 684, 687." *District of Columbia* v. *Clawans*, 300 U. S. 617, 627. The statute authorizing review by writ of error of a sentence to punishment for criminal contempt as

a "judgment in a criminal case" enlarged to a substantial extent the rights of a person adjudged guilty of such a contempt. But this statute, interpreted, as it must be, in the light of the common law (see *Armburg* v. *Boston & Maine Railroad*, 276 Mass. 418, 426; *Levin* v. *Wall*, 290 Mass. 423), cannot be held to confer any right of review other than that which its words naturally import — that is, a right of review subject to the limitations upon review by writ of error. This is true even if no other form of review is available to a person adjudged guilty of criminal contempt. Consequently we need not decide whether any other form of review — by exceptions or otherwise — is available. With respect to exceptions, G. L. (Ter. Ed.) c. 278, § 31, provides in part that they "may be alleged by a defendant in a criminal case who is aggrieved by an opinion, ruling, direction or judgment of the superior court rendered upon any question of law arising at the trial of such case." But in *Commonwealth* v. *McNary*, 246 Mass. 46, 48, a proceeding for criminal contempt, where exceptions were considered by this court because in any event the ultimate decision would have been adverse to the defendant, the court said: "The proper way to raise an error of law in such case is by writ of error. . . . There is grave doubt whether exceptions lie in a case for contempt. . . . We do not pause to discuss or to decide that question." See also *New York Central Railroad* v. *Ayer*, 253 Mass. 122, 128.

There is no merit in the contention of the defendant that the language of the writ addressed to the Chief Justice of the Superior Court commanding him to "send us the record and process of the suit aforesaid, with all things touching them," imports that the transcript of the evidence is to be sent to the Supreme Judicial Court for consideration. The writ must be interpreted in the light of the nature of the proceeding. And, on such an interpretation, the transcript of the evidence is not one of the "things touching" the record and process. Moreover, the limited scope of the proceeding is recognized in the writ itself by the further language thereof "that *inspecting the record and process* aforesaid, we may, for correcting that *error therein*, further

cause to be done what of right, and according to law, shall be to be done." (Italics ours.)

2. The defendant's first assignment of error is the "denial of his motion for interrogatories to be filed to him so that he might answer the same under oath and be relieved from the alleged contempt." The sole ground relied on by the defendant in support of this assignment is that he was entitled to purge himself of contempt by his oath and to make such oath in sworn answers to interrogatories. And the defendant's sixth assignment of error — the "denial of his motion to dismiss the complaint for contempt" — is argued solely on the ground that he was entitled to purge himself by his oath. By the defendant's sworn answer to the complaint he denied generally that he was guilty of the contempt charged therein and denied specific allegations of facts relied on as constituting such contempt. There was no error in the denial of these motions.

No decision of this court has affirmed the doctrine that the oath of a contemnor is a bar to a prosecution for contempt. Reference to the matter was made in *Cartwright's Case*, 114 Mass. 230, 239, where it was said in "a court of chancery, at least . . . [the contemnor's] oath is not conclusive in his favor, but may be contradicted by other evidence." This statement went as far as the nature of that case required and no inference is to be drawn therefrom as to the law of the Commonwealth relating to other classes of contempt cases. The doctrine in question, however, was considered by the Supreme Court of the United States in *Clark* v. *United States*, 289 U. S. 1, 19, where that court, in a unanimous decision with an opinion by Mr. Justice Cardozo, stating that the doctrine "has ceased to be a defense in England since 1796. . . . has been rejected generally in the States" and "has taken its place with ordeal and wager of law and trial by battle among the dimly remembered curios of outworn modes of trial," held that the "oath of a contemnor is no longer a bar to a prosecution for contempt." This decision with respect to the law of the United States is highly persuasive with respect to the law of this Commonwealth, and we think that, in the ab-

sence, as here, of a controlling decision to the contrary, it should be followed in this Commonwealth. In view of this conclusion the grounds advanced by the defendant for the granting of these motions fail.

3. The defendant's second assignment of error is the "denial of his motion for further particulars concerning the complaint for contempt, and the court's limiting certain particulars ordered." This denial was not error.

The proper procedure in prosecutions for criminal contempts which are not committed in the presence of the court is "closely analogous to that in ordinary criminal cases," though "most of the technical requirements of criminal statutes have no application." *Hurley* v. *Commonwealth*, 188 Mass. 443, 446. As was said in *Root* v. *MacDonald*, 260 Mass. 344, 365, "There are numerous particulars in which a proceeding for contempt, even when its object and result are wholly punitive, differs from an ordinary criminal proceeding." But, as was said in *Woodbury* v. *Commonwealth*, 295 Mass. 316, 323, "In the prosecution of contempt not committed in open court, 'the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defence or explanation.' *Cooke* v. *United States*, 267 U. S. 517, 537. Technical accuracy of pleading however is not required." And, by analogy to the procedure in ordinary criminal cases, the defendant in this case was entitled as of right only to such particulars as, together with the allegations in the complaint, would satisfy the requirement that he be so advised of the charges against him as to have a reasonable opportunity to meet them. Whether the Commonwealth should be ordered to furnish particulars not essential for this purpose was, at most, discretionary with the trial judge. See *Commonwealth* v. *Bartolini*, 299 Mass. 503, 509. It is not the office of a bill of particulars in an ordinary criminal case to compel the Commonwealth to disclose its evidence (*Commonwealth* v. *Jordan*, 207 Mass. 259, 265), and it has no such office in a prosecution for criminal contempt. Without intimating that the complaint without the particulars furnished would have been inade-

quate, we think it clear that the complaint together with these particulars fully advised the defendant of the nature of the offence charged against him, and advised him of the facts relied on as constituting such offence in sufficient detail to give him reasonable knowledge of the grounds of the charge and reasonable opportunity to meet such charge. He had no right to anything more. Whether in any respect the technical accuracy of an indictment is lacking need not be considered.

4. The defendant's third assignment of error is the denial of his motion to expunge paragraph numbered 3 of the complaint for contempt, and his fourth assignment is the denial of his motion to quash this paragraph.

This paragraph charges conspiracy of the defendant and others to influence and corrupt jurors. The defendant contends that the paragraph should have been quashed or expunged for the reason that a "conspiracy to commit a contempt is not in itself a punishable contempt." This proposition of law — whether or not sound — is inapplicable to this complaint. The complaint cannot rightly be construed as charging conspiracy "in itself" independent of other facts. Plainly the several numbered paragraphs of the complaint cannot be read as separate counts, each of which must be sufficient in itself unaided by averments in other counts not incorporated by reference (see *Commonwealth* v. *Crossley*, 162 Mass. 515, 516), but, on the contrary the complaint must be considered as a whole, charging a single contempt committed by the defendant through a course of action pursued by him of which each element was an integral part of the alleged contempt, and setting forth in each of the several numbered paragraphs, including the third paragraph, an element or elements of the alleged contempt. And conspiracy was a part of the contempt charged. See *Blankenburg* v. *Commonwealth*, 272 Mass. 25, 35. See also *Commonwealth* v. *Perkins*, 225 Mass. 80, 82. The third paragraph, therefore, was not immaterial and could not rightly have been quashed or expunged as surplusage. Moreover, this paragraph — at least with the particulars furnished upon motion of the

defendant — sufficiently alleges the element of the charge of contempt with which it deals and could not rightly have been quashed or expunged as incomplete. Compare *Commonwealth* v. *Dyer*, 243 Mass. 472, 491.

5. The defendant's fifth assignment of error is the denial of his motion to quash the complaint for contempt. This was a motion to quash for the reason that the complaint "charges the accused disjunctively, so as to leave it uncertain what is relied on as the accusation against him." The denial of this motion was not error.

The defendant in the statement of the reason for the motion invoked a rule which was stated in like terms in *Commonwealth* v. *Grey*, 2 Gray, 501, 502, as applied to an ordinary criminal case. See also G. L. (Ter. Ed.) c. 277, § 31. So far as this objection relates merely to the form of the complaint (see *Commonwealth* v. *McKnight*, 283 Mass. 35, 38) it will not lie to a complaint for contempt since technical accuracy is not required (*Woodbury* v. *Commonwealth*, 295 Mass. 316, 323), and so far as this objection relates to the substance of the complaint on the ground that the complaint lacks the requisite certainty it is without merit. The several allegations of acts of the defendant in the course of his conduct constituting the alleged contempt are not mutually inconsistent. A co-conspirator may be the agent of another co-conspirator. *Hyde* v. *United States*, 225 U. S. 347, 367–368. And an allegation that the defendant influenced and corrupted jurors is not inconsistent with an allegation that he "did hire, retain and solicit" other persons to solicit jurors and to give and offer to give them gifts and gratuities with intent to influence their decisions and that these persons did so. Undoubtedly the offence charged was of such a nature that it could have been committed by the defendant through his agents, and the charge that he committed such a contempt would be sustained by proof that he did so through his agents. See *Commonwealth* v. *Park*, 1 Gray, 553. But even if the complaint can be read as charging the commission of the contempt by the defendant directly or, in the alternative, by means of his agents, it is not on that account bad

for uncertainty. Different means by which an offence was committed may be alleged in the alternative even in an ordinary criminal case. G. L. (Ter. Ed.) c. 277, § 31. Furthermore — assuming that the point was raised by the motion — the complaint is not bad on the ground that it charges several distinct offences of contempt. It charges a single offence of contempt, consisting of a course of conduct of the defendant tending "to interfere with, impede and obstruct the proper administration of justice." The case of *Commonwealth* v. *Fuller*, 163 Mass. 499, related to an offence consisting of a single act and is readily distinguishable. The complaint is not open to the objection of duplicity, even if certain elements of the defendant's conduct alleged constituted contempt independent of other alleged elements of such conduct. See *Commonwealth* v. *Holmes*, 165 Mass. 457, 459; *Commonwealth* v. *Dyer*, 243 Mass. 472, 491. Moreover, since the defendant was fully advised of the nature and grounds of the offence charged, an objection to the complaint for duplicity was merely formal and not substantial. See *Commonwealth* v. *Hogan*, 249 Mass. 555, 561.

6. The defendant's seventh assignment of error is the denial of his motion for a jury trial. The motion was denied rightly.

In *Root* v. *MacDonald*, 260 Mass. 344, 365, where the contempt had a criminal aspect, the court in enumerating some of the "numerous particulars in which a proceeding for contempt, even when its object and result are wholly punitive, differs from an ordinary criminal proceeding," stated, as one of these particulars, that "There is no right of trial by jury." See *Walton Lunch Co.* v. *Kearney*, 236 Mass. 310, 317. See also *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 373–374. This statement is in conformity with the often quoted statement of Chief Justice Gray in *Cartwright's Case*, 114 Mass. 230, 238, that the "summary power to commit and punish for contempts tending to obstruct or degrade the administration of justice is inherent in Courts of Chancery and other Superior Courts, as essential to the execution of their powers and to the maintenance of their authority, and is part of the law of the land, within

the meaning of Magna Charta and of the twelfth article of
our Declaration of Rights."

The principle embodied in the decisions of this court that
a person accused of criminal contempt has no right of trial
by jury has been fully recognized — at least apart from
statutory provision therefor — by the Supreme Court of the
United States. It was said in *Eilenbecker* v. *District Court
of Plymouth County,* 134 U. S. 31, 36, that "If it has ever
been understood that proceedings according to the common
law for contempt of court have been subject to the right of
trial by jury, we have been unable to find any instance of it.
It has always been one of the attributes — one of the powers
necessarily incident to a court of justice — that it should
have this power of vindicating its dignity, of enforcing its
orders, of protecting itself from insult, without the necessity
of calling upon a jury to assist it in the exercise of this
power." See also *Interstate Commerce Commission* v. *Brim-
son,* 154 U. S. 447, 488. This statement was quoted by the
court in full in *Bessette* v. *W. B. Conkey Co.* 194 U. S. 324,
337 — a case "within the punitive rather than the remedial
class" (page 330) — and in part in *Debs, petitioner,* 158
U. S. 564, 596–597, in each instance with approval. And
in *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, 450,
the court said in regard to the power to punish for contempt
that "There has been general recognition of the fact that
the courts are clothed with this power and must be author-
ized to exercise it without referring the issues of fact or
law to another tribunal or to a jury in the same tribunal."
No departure from this view of the law apart from statute,
but rather an implied acceptance thereof, is shown in
*Michaelson* v. *United States,* 266 U. S. 42, 62, 67, where a
statute conferring the right of trial by jury in a certain class
of contempts was sustained as constitutional, the court say-
ing: "The statutory extension of this constitutional right
to a class of contempts which are properly described as
'criminal offences' does not, in our opinion, invade the
powers of the courts as intended by the Constitution or
violate that instrument in any other way." No question
of the validity of a statute purporting to confer such a right

is involved in the present case.  Compare *Walton Lunch Co.* v. *Kearney,* 236 Mass. 310; *Opinion of the Justices,* 275 Mass. 580, 584.  There is no such statute.

7. The defendant's eighth, ninth, fourteenth, fifteenth, seventeenth to twenty-second, inclusive, and twenty-fifth assignments of error are refusals to make requested rulings based upon the evidence.  In the absence of the evidence which, as already stated, is not part of the record no error is shown.  Likewise the defendant's thirty-sixth, thirty-seventh, thirty-eighth, fortieth and forty-first assignments of error, also relating to the evidence, are without merit.

8. Many of the other assignments of error are refusals to make requested rulings.  The rulings requested to which these assignments relate, however, were not necessarily based upon the evidence.  Since the result to the defendant will be the same in any event we consider these requested rulings without deciding whether the requests and the disposition of them by the trial judge are properly included in the record and whether the assignments of error relating thereto are properly before us in view of the limitation upon the scope of review by writ of error.  See *Blankenburg* v. *Commonwealth,* 272 Mass. 25, 36.  See also *Commonwealth* v. *McNary,* 246 Mass. 46, 48; *Commonwealth* v. *Morgan,* 280 Mass. 392, 393.

9. The defendant's tenth, eleventh, twelfth and sixteenth assignments of error are the refusals of the trial judge to make certain rulings requested defining the nature and scope of contempt.  The general purport of the rulings requested is that an act or attempt falling short of actual contact with or influence upon a juror or jurors does not constitute contempt.  Under the authority of *Hurley* v. *Commonwealth,* 188 Mass. 443, 447, they did not state the law correctly. See *Sinclair* v. *United States,* 279 U. S. 749, 762–763.  The defendant contends, however, that there was error in refusing these requests because the refusal thereof was inconsistent with other rulings requested by the defendant and made.  The rulings so made covered much, if not all, of the same subject matter as rulings refused and in some respects, at least, were too favorable to the defendant under the

authority of the case cited. So far as the rulings requested were covered in substance by the rulings made by the trial judge he would not have been required to make them even if they had been correct. *Clough* v. *Cromwell*, 254 Mass. 132, 135. *Rezendes* v. *Prudential Ins. Co.* 285 Mass. 505, 514. And he was not required to make the incorrect rulings requested merely because they would have been consistent with other rulings made by him. The trial judge dealt with the rulings relating to this subject matter in a manner at least sufficiently favorable to the defendant.

10. The defendant's thirteenth assignment of error is the refusal of the trial judge to rule that the "defendant has committed no act which itself had the direct and natural effect to obstruct or impede the administration of justice." So far as this requested ruling is to be construed as based on the evidence the necessary absence of the evidence precludes examination thereof. And so far as it depends upon the facts found by the trial judge and set forth in the order adjudging the defendant in contempt it was clearly incorrect. See *Hurley* v. *Commonwealth*, 188 Mass. 443, 447; *Sinclair* v. *United States*, 279 U. S. 749, 762–763. Moreover, the refusal of the requested ruling that "corrupting a juror or jurors does not by itself constitute an obstruction to the court in the performance of its duty" — the defendant's twenty-sixth assignment of error — was right. Such obstruction would be the natural and necessary consequence of "corrupting" a juror or jurors.

11. The defendant's twenty-third and twenty-fourth assignments of error are the refusals of certain requested rulings to the effect that the defendant in a criminal case is "required" or "bound" to investigate prospective jurors to avoid waiving or being estopped to object to disqualifications of jurors. With respect to these requested rulings the trial judge stated, "Not applicable, as I have already ruled that lawful investigation is proper." This was not error. The subject was adequately covered by other rulings made at the request of the defendant.

12. The defendant's twenty-seventh assignment of error is the refusal of the trial judge to rule as requested by the

defendant that "The district attorney should not be allowed to use contempt proceedings as the means to deprive the accused of his right to have the alleged crime presented to a grand jury and then if an indictment were returned to have a trial by jury." With respect to this requested ruling the court said, "The court is not presently concerned. D. A. is free to present to grand jury." There was no error. The "jurisdiction and power of the court [to punish for contempt] do not depend upon the question whether the offence might or might not be punished by indictment." *Cartwright's Case,* 114 Mass. 230, 239. "Punishment, purely as such, through contempt proceedings, legislative or judicial, is not precluded because punishment may also be inflicted for the same act as a statutory offense." *Jurney v. MacCracken,* 294 U. S. 125, 151. There is no merit in the defendant's contention that the provision of G. L. (Ter. Ed.) c. 268, § 13, which makes it a crime punishable by fine or imprisonment — a crime prosecution for which is within the jurisdiction of the Superior Court — to corrupt or attempt to corrupt a juror with intent to influence his decision, precludes contempt proceedings in the Superior Court based upon acts such as are described in the statute. No such implication is to be drawn from the statute and we need not consider whether a statute having that effect would be constitutional. And a punishment for contempt does not bar a prosecution for crime based on the same act. *Chapman, petitioner,* 166 U. S. 661, 672. *Jurney v. MacCracken,* 294 U. S. 125, 151–152. *Merchants' Stock & Grain Co. v. Board of Trade of Chicago,* 201 Fed. 20, 27. *State v. Kasherman,* 177 Minn. 200, 202. 2 Freeman on Judgments (5th ed.) § 849. Furthermore, the refusal of the trial judge to rule as requested by the defendant — his twenty-eighth assignment of error — that in the case at bar "the district attorney is attempting to use contempt proceedings as a means to deprive the accused" of his right described in the previous assignment, was proper, for the reason, apart from others, that, as appears from the previous discussion, he had no such "right to have the alleged crime presented to a grand jury and then if an indictment were returned to

have a trial by jury," to the exclusion of contempt proceedings.

13. The defendant's twenty-ninth assignment of error is that the trial judge granted, but did not follow in making his decision, a·number of the defendant's requests for rulings. The rulings requested and made were, in some respects at least, too favorable to the defendant. But we find nothing in the record showing that they were not followed by the trial judge in making his decision.

14. There is no merit in the defendant's thirtieth assignment of error that the "facts found by the court do not constitute contempt of court." We do not understand the defendant to argue this assignment. At any rate it clearly is without merit. The facts found constitute contempt. *Hurley* v. *Commonwealth*, 188 Mass. 443. *Opinion of the Justices*, 301 Mass. 615, 618. The thirty-second, thirty-third, thirty-fourth and thirty-fifth assignments of error — which must be taken as referring to the facts found — for a like reason are without merit. They recite respectively that "No word or act" on the part of the defendant "constituted a contempt," "hindered the administration of justice" "had a tendency to interfere with the course of justice," and "warranted a conviction for contempt."

15. The defendant's thirty-first assignment of error is that the "sentence and punishment were excessive and unreasonable." We do not understand the defendant to argue this assignment. But consideration of it discloses no error. Commitment to the common jail was legal. G. L. (Ter. Ed.) c. 220, § 14. *Hurley* v. *Commonwealth*, 188 Mass. 443, 448. *Kelley, petitioner*, 292 Mass. 198, 199. And even if it be assumed that in some circumstances there might be error of law with respect to the length of time for which such a commitment was made that could be reviewed on writ of error (compare *New York Central Railroad* v. *Ayer*, 253 Mass. 122, 129) no such error is shown in the present case. With respect to an offence which might reasonably be thought to be less flagrant than that for which the defendant was committed, the court said in *Hurley* v. *Commonwealth*, 188 Mass. 443, 447, 448, "This was a very gross

and wicked attempt to interfere with the administration of justice in court, and was a contempt which deserved severe punishment. It was an attempt at bribery of persons in an important position of trust. Contempts of this kind are most dangerous assaults upon the integrity of our courts in the trial of cases. It is inconceivable that any court would treat such an offence as anything less than a criminal contempt of the gravest character." See also *Opinion of the Justices*, 301 Mass. 615, 618–619.

16. The defendant's thirty-ninth assignment of error is that it "was error for the court to enter a judgment or sentence without setting out sufficiently the facts which were found by the trial judge." The facts recited in the order adjudging the defendant in contempt were sufficient, as already pointed out, to support the judgment for contempt. The defendant was not entitled as of right to more detailed findings. See *Woodbury* v. *Commonwealth*, 295 Mass. 316, 319. See also *Hurley* v. *Commonwealth*, 188 Mass. 443, 447.

17. The defendant argues that it was error for the trial judge to deny the defendant's request that the judge report the case to this court. But no such matter was assigned by the defendant as error and consequently nothing is before us for decision on this point. Assignments of error must be the basis of the defendant's contentions. *Woodbury* v. *Commonwealth*, 295 Mass. 316, 319. The issues between the parties were made by the assignments of error and the Commonwealth's plea thereto of *in nullo est erratum*. See G. L. (Ter. Ed.) c. 250, § 2. Rule 29 of the Supreme Judicial Court for the Regulation of Practice at Common Law (1926), 252 Mass. 598. *Perkins* v. *Bangs*, 206 Mass. 408, 413. Compare *Commonwealth* v. *Zelenski*, 287 Mass. 125, 128; *Commonwealth* v. *Ventura*, 294 Mass. 113, 125. But even if the matter were open and it were assumed that the trial judge was authorized by G. L. (Ter. Ed.) c. 278, § 30, to report questions of law arising on a prosecution for criminal contempt — a point which we do not discuss — and that a refusal to report could ever be subject to review, no error in this respect is disclosed by

the record.   See *Commonwealth* v. *McKnight,* 289 Mass. 530, 539.   See also *Commonwealth* v. *Child,* 10 Pick. 252, 255.

It follows that since the ruling of the single justice was right the exception thereto must be overruled, and since no error is disclosed in the record of the case in the Superior Court the judgment of that court must be affirmed.

*So ordered.*