Lyle S. **WOODCOCK**, Petitioner,

v.

R. W. **AMARAL**, Respondent.

Misc. Civ. No. 72–99–C.

United States District Court,
D. Massachusetts.

April 1, 1974.

Daniel F. Featherston, Jr., Featherston, Homans & Klubock, Boston, Mass., for petitioner.

Michael C. Donahue, Asst. Atty. Gen., Commonwealth of Mass., for respondent.

## MEMORANDUM and ORDER

CAFFREY, Chief Judge.

This matter came before the Court on the basis of petitioner's objections to a Memorandum, Findings and Recommendation filed by the United States Magistrate. The case stems from an amended petition for a writ of habeas corpus filed by petitioner who was indicted, along with other employees of the so-called "Small Loan" companies, on May

8, 1964, in the Superior Court, Suffolk County, Commonwealth of Massachusetts. Petitioner was named as a party-defendant in three indictments and after a five-month trial he was found guilty, on December 18, 1966, on all three counts. On November 4, 1971, petitioner's conviction was affirmed by the Massachusetts Supreme Judicial Court, whose opinion appears at Com. v. Beneficial Finance Co., Mass.Adv.Sh., 1971, p. 1367, 275 N.E.2d 33. On June 12, 1972, the United States Supreme Court denied petitioner's application for a writ of certiorari, 407 U.S. 914, 92 S.Ct. 2433, 32 L.Ed.2d 689.

The amended petition was referred to a Magistrate who filed a 23-page document captioned "Memorandum, Findings and Recommendations on Respondent's Motion to Dismiss." The Magistrate made a recommendation to this Court that respondent's motion to dismiss be allowed. Thereafter, this Court received memoranda of law from both parties with reference to the Magistrate's recommendation, subsequent to which counsel orally argued the matter in this court.

At the oral argument, counsel for petitioner concentrated his argument on four of the seven constitutional issues which petitioner seeks to raise in the amended petition for writ of habeas corpus. Petitioner's allegations will be discussed in the order listed by counsel for petitioner at oral argument.

1. *Petitioner's claim "as there was insufficient evidence presented to the grand jury, it was constitutionally impermissible for them to indict this petitioner."*

 This contention was disposed of adversely to the petitioner at pp. 1396–1397 of the opinion of the Supreme Judicial Court [275 N.E.2d 33]. A number of Supreme Court decisions have established that it is not necessary for this court to consider the merits of this claim by petitioner because the claim is not one of constitutional proportion. See United States v. Calandra, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974), in which the Supreme Court ruled that the Fourth Amendment's exclusionary rule is not applicable to grand jury proceedings. The Supreme Court also observed (at p. 345, 94 S.Ct. at p. 618):

"Thus, an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence, Costello v. United States, *supra* [350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397]; Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910), or even on the basis of information obtained in violation of a defendant's Fifth Amendment privilege against self-incrimination, Lawn v. United States, 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958)."

To the same effect see Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1956); United States v. Blue, 384 U.S. 251, 255, n. 3, 86 S.Ct. 1416, 16 L.Ed.2d 510 (1966). Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) relied on by petitioner, is wide of the mark. That case involved an indictment which was not valid on its face and which did not identify the offense charged with adequate specificity. Likewise, Connor v. Picard, 434 F.2d 673 (1 Cir. 1970), also cited by petitioner, is even more remote, dealing as it does, with the lack of specificity in "John Doe" warrants. I rule there is no constitutional merit in petitioner's contention relative to allegedly insufficient evidence being submitted to the Suffolk County grand jury in his case.

2. *Petitioner claims "the prosecutor's suppression of exculpatory material evidence worked a denial of due process of law."*

 This contention concerns a claim that counsel for petitioner was given certain portions of the grand jury testimony of one Heath, the principal witness against petitioner, together with advice from the prosecutor that if Heath

were cross-examined as to certain apparently exculpatory portions of his grand jury testimony, such cross-examination would result in bringing out other evidence of criminality. Petitioner claims that this advice or warning from the prosecutor was, in fact, a misrepresentation which had the effect of a "suppression of the evidence." This contention was dealt with by the Supreme Judicial Court adversely to petitioner on pp. 1480–1487 of its opinion [275 N.E.2d 33]. Petitioner concedes that to come within the ruling of the Supreme Court in Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), the suppressed evidence must be both exculpatory and material. The Supreme Judicial Court ruled in substance that the allegedly suppressed evidence was not material.

The record of this case shows that no evidence was, in fact, "suppressed." The evidence was made available to petitioner's counsel with the admonition that its use might develop other evidence adverse to the interests of petitioner. The record contains an adequate explanation by the prosecutor of just what he had in mind in advising petitioner's counsel of the possible consequences of the use of this evidence. The fact that counsel for petitioner erroneously understood which criminal conduct was being adverted to by the District Attorney does not bring this case within the rule of Brady v. Maryland. The District Attorney cannot be saddled with responsibility for misinterpretation of his warning by counsel for petitioner. To the extent that there was ambiguity in the statement of the prosecutor it certainly could have been cleared up by additional questioning on the part of petitioner's counsel.

Petitioner's complaint relative to the non-production of certain vouchers appears to be a post-trial fishing expedition, which the Supreme Court specifically warned against in Giglio v. United States, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). These vouchers were characterized by the trial judge as

not being so material that they created a reasonable likelihood that their production would have changed the jury's verdict. This ruling was approved, and properly so, by the Supreme Judicial Court at p. 1481 of its opinion [275 N. E.2d 33].

*3. Petitioner claims "petitioner's bribery conviction was only affirmed by the illegal application ex post facto of a statute enacted more than a year after the trial."*

■ This contention likewise was considered by the Supreme Judicial Court and decided adversely to petitioner at p. 1487 of its opinion [275 N.E.2d 33]. Petitioner claims that in upholding his conviction the court was, in effect, making an *ex post facto* application of Mass.G.L. c. 274, § 2, as amended. This statute was enacted in 1968 after the completion of petitioner's trial. An examination of the record establishes that this claim is devoid of merit. The opinion of the Supreme Judicial Court made no reference, directly or indirectly, to the 1968 statute. The opinion made it abundantly clear that petitioner's conviction was affirmed on the basis of common law principles of agency. The opinion noted, at p. 1487, 275 N.E.2d at p. 110,

"One may be convicted as a principal where he delegates to an agent the authority to do the act. See Commonwealth v. Dolan, 304 Mass. 325, 339 [23 N.E.2d 904]."

I rule there is no validity to petitioner's contention that he has been victimized by an *ex post facto* application of the state statute.

*4. Petitioner's fourth claim is that "there was no evidence admitted against him that would show that any other person at the New York meeting had authority to enter into the conspiracies alleged in indictments numbered 11,900 and 11,910 and, therefore, there was no one else with whom he could conspire."*

■ This contention is unsupported by any relevant decision and ignores the basic nature of a conspiracy, the gist

of which is an agreement or understanding between the co-conspirators to accomplish an illegal purpose. Conspiracy has been made a crime in order to protect society from the enhanced dangers inherent in joint or concerted action by two or more persons seeking to accomplish an illegal purpose. The success of the conspiracy or the commission of the substantive crime is immaterial to the proof of a criminal conspiracy. Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961). While the commission of the substantive offense which was the object of the conspiracy charged may have been subject to the approval of the corporate employers of those shown to be conspirators, no corporate blessing was required or needed as part of the illegal agreement entered into by those found to have been conspirators. This contention of petitioner is totally without legal merit, much less constitutional merit. Cf. United States v. Sarno, 456 F.2d 875, 878 (1 Cir. 1972).

■ In addition to the above four points which were orally argued by counsel for petitioner, in his memorandum of law petitioner raises the contention that the participation of the Massachusetts Crime Commission in the procurement of the indictments by the grand jury violated the equal protection clause of the Fourteenth Amendment. No socially useful purpose will be served by this Court's rehashing the proper disposition of these contentions which was made by the Supreme Judicial Court at pp. 1371–1382 of its opinion [275 N.E.2d 33]. Petitioner's contentions in this regard do not fall within the guidelines announced by the Supreme Court in San Antonio Independent School District v. Rodriguez, 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), (1) because the procedure followed by the Commonwealth in connection with the small loan cases so-called was not a "classification" by the state which impinged on petitioner's constitutional rights; and (2), even if the procedure could be so characterized it served a legitimate state purpose.

■ Nothing in the equal protection clause forbids the use of different state methods of prosecution if they serve a rational purpose. See Johnson v. Louisiana, 406 U.S. 356, 363, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972). There, the Supreme Court announced that it found nothing invidious in the classification selected by the state "to facilitate, expedite, and reduce expense in the administration of criminal justice." I rule that petitioner has failed to show that the Massachusetts procedure impinged on any claimed right under the equal protection clause.

■ Petitioner also contends that the complex nature of the trial itself denied him due process. This contention is self-refuting since it logically boils down to the argument that if defendants commit their criminal conduct in a complex manner they are virtually untriable by the state. This matter likewise was considered and ruled on adversely to petitioner in the opinion of the Supreme Judicial Court at pp. 1386–93 and at pp. 1474–1479 [275 N.E.2d 33]. Petitioner has failed to make a showing in support of his contention that the jury was unable to absorb the evidence or to understand the limitations placed on the use of evidence and the instructions of the trial judge. The record shows that the trial judge painstakingly went over every item of evidence with the jury, carefully explained which items were to be considered with reference to each defendant, and also advised that if they could not recall the limitations with regard to a defendant not to consider it against that defendant. The record also shows that in final arguments counsel for the various defendants took advantage of the opportunity to review with the jurors the evidence which referred to the particular counsel's client.

Petitioner's remaining contentions do not warrant any further analysis by this Court and, accordingly, it is

Ordered:

Respondent's motion to dismiss is allowed and the petition for writ of habeas corpus is denied.