*In re* DINGLEY.

1. CONTEMPTS—PUNISHMENT—CRIMINAL NATURE.
   It is not an open question in this State that the court may punish an offender as for criminal contempt: the power is conferred by 1 Comp. Laws, § 1098 (5 How. Stat. [2d Ed.] § 12589), and exists independently of the statute.

2. SAME—TRIAL—JURY.
   The issue in cases of criminal contempt is not for a jury but for the court.

3. SAME—PUBLICATION—CRITICISM OF COURT—NEWSPAPERS.

    The publication in a newspaper of an article charging the judge, who was presiding over a grand jury, with being the author of an attack upon the prosecuting attorney purporting to issue from the jury, that he used the grand jury for a club to get even with certain citizens of the county, and otherwise criticising his conduct, was a contempt of court, unless the truth of the article could be established.

4. SAME—PRACTICE—JUDGE—DISQUALIFICATION.

    While the judge who was criticised was not thereby disqualified from sitting in the contempt proceeding, the better practice is to call in another judge.[1]

5. SAME—TIME.

    *Held*, also, that it was improper to proceed with undue haste so as to deprive the offender of a fair opportunity to prepare his case; and that the issuance of an order to show cause dated February 9, 1914, returnable on the 16th of February, on which date the court proceeded to impose punishment, against the protest and objection of his counsel, who asked for more time, did not afford a reasonable opportunity for the respondent to defend himself.

Certiorari to Kalamazoo; Stewart, J. Submitted June 22, 1914. (Docket No. 89.) Decided July 24, 1914.

Contempt proceedings against Edward N. Dingley. From a judgment finding respondent guilty, respondent brings certiorari. Reversed.

*Joseph L. Hooper* and *Lincoln H. Titus*, for petitioner.

*E. M. Irish, Alfred J. Mills,* and *Charles W. Nichols,* for circuit judge.

MOORE, J. February 5, 1914, a grand jury, sitting in the county of Kalamazoo, Mich., made a report. The relator, Edward N. Dingley, is the proprietor,

---

[1] As to the qualification of a judge to sit on trial of one for contempt consisting of reflections upon himself, see note in 11 L. R. A. (N. S.) 619.

editor, and publisher of a weekly newspaper called the "Progressive Herald," published in the city of Kalamazoo, and circulating in said city and elsewhere. In the issue of said newspaper of the date of February 7, 1914, the following article appeared:

"A JUDICIAL TIRADE.

"At last the business of the grand jury is concluded and an even dozen indictments have been returned.

"But the indictments have been lost sight of in the bitter attack made by the Circuit Judge against Prosecuting Attorney Bennett.

"The attack comes nominally from the grand jury, but it is a good guess that the Circuit Judge wrote it.

"This epistle has the ear marks of the Circuit Judge. It is a demonstration that the judge has dominated the situation, and has endeavored to use the grand jury as a club with which to get even with some of our citizens whom he does not like.

"The Circuit Judge says that Bennett has drawn money from the county treasury, illegally, that he refused to assist in the prosecution, and that he is incompetent to hold the office of Prosecuting Attorney.

"The really funny part of this communication is the declaration of the Judge that the Prosecuting Attorney has used language 'too filthy, vile and disgusting to be embodied in this report.' Those who are acquainted with Bennett know that this charge is not true. Furthermore, the Circuit Judge, so common report says, often indulges in language that fits exactly his own characterization of the prosecutor's alleged talk.

"Bennett very properly says: 'If I am guilty of this charge why am I not indicted?'

"Special Prosecutor Nichols telephoned Bennett from Lansing hastening to say that he, Nichols, had nothing to do with the Judge's screed.

"Now that Kalamazoo has been dragged through the mire sufficiently to suit the most vindictive and most unbalanced man, it would be a good plan for everybody to stop knocking and say a good word about Kalamazoo and his neighbor.

"The endeavor of all should now be in forgetting the personal venom stirred up along the line, and work for the good of Kalamazoo, and her people.

"The truth will prevail and the part played by all the leading actors in the grand jury investigation will be given its proper importance and its real motive and inspiration."

February 9, 1914, the circuit judge issued an order directing Mr. Dingley to show cause on the 16th day of February, 1914, why he should not be punished for a criminal contempt of said court, because of said publication. Attached to said order to show cause were certain affidavits. The record does not show the date of the service of the order to show cause. On February 16, 1914, the respondent appeared in person, and by his attorney, filed a sworn answer to the order to show cause, and entered a plea of not guilty.

Among other things the record discloses the following:

"STATE OF MICHIGAN.
"THE CIRCUIT COURT FOR THE COUNTY OF KALAMAZOO.
"In the Matter of Edward N. Dingley, Relator (Contempt Proceedings).
"Chas. W. Nichols appeared for the court.
"Joseph Hooper for the relator.
"Answer filed and relator pleaded not guilty."
\*	\*	\*	\*	\*	\*

"*The Court:* I understand, Mr. Hooper, that you do not deny the fact that your client, Mr. Dingley, published the article that he is charged with; in fact you conceded that in your answer?

"*Mr. Hooper:* Yes, sir; that is admitted.

"*The Court:* Now if you have any proof, as to the accuracy of the publication, to offer this morning you can put it on the witness stand; otherwise I will proceed at once.

"*Mr. Hooper:* It would be an absolute impossibility to present proof here this morning that we should be allowed to present. It is wholly out of the question, and we request the court, as a right, to be given such reasonable opportunity under the circumstances as appears necessary for us to prepare a defense and argue the law of the matter.

"*The Court:* Under your plea and confession we will proceed. You speak for your client, do you?

"*Mr. Hooper:* Yes, sir.

"*The Court:* Mr. Nichols, I wish you would show the gentlemen those two letters and see if they recognize them as having come from him or his client. [Mr. Nichols here handed Mr. Hooper two letters.]

"*Mr. Hooper:* Mr. Dingley says he had nothing to do with the sending of these letters, and as far as I am concerned I certainly had nothing to do with it.

"*The Court:* I don't think you did, Mr. Hooper; ask your client if he did not publish that in his paper then.

· "*Mr. Hooper:* I don't think I will ask my client that, that has not been brought to the attention of the court as a contempt proceedings here."

Against the objection of counsel the letters were read into the record, when the following occurred:

"*The Court:* Mr. Dingley, you may stand up.

"*Mr. Hooper:* I do not wish to interrupt the proceedings at all—

"*The Court:* I do not intend you shall.

"*Mr. Hooper:* May I ask the Court?

"*The Court:* Yes, sir.

"*Mr. Hooper:* Is the respondent to be sentenced without an opportunity upon my part to do anything for him? I have only been called into the matter recently.

"*The Court:* You have already by your plea admitted it, and I have already made a ruling; you confess to having published the article that you are charged with having published. This is the whole proposition. This is a criminal contempt proceeding. I have overruled—if you didn't understand it before you understand it now—your objections to that proposition. Mr. Dingley, you have heard those articles, have you?

"*Mr. Dingley:* Yes. sir.

"*The Court:* The first one read was taken from your paper, was it not?

"*Mr. Dingley:* Yes, sir; it was.

"*The Court:* You stand before the court now charged with contempt of court in publishing an article a week ago last Saturday that the court at any

rate concludes was in contempt of the court, and sought to bring this court into contempt of the people.

"*Mr. Dingley:*   My attorney—

"*The Court:*   Never mind your attorney, listen to me, I have nothing to do or say to you except so far as it pertains to your action as relates to the court. Myself personally and individually is of no importance. I would be glad to deal with you in another way, but I cannot bring any personal matter as far as it relates to the court. I understand you as many others do. Without any desire to inflict unnecessary punishment on you I propose to give you an opportunity, and that is this: While you richly deserve the full punishment provided by the statute for what you have done because you have taken advantage in every way, you have done what no good citizen would do, you have done what no good American would do, I am going to give you an opportunity before passing sentence to make some amends. I will adjourn this matter for one week from today, and what the court will do at that time will depend entirely upon what you do.

"*Mr. Hooper:*   May I ask the court, am I to understand the court finds the respondent guilty of contempt charged?

"*The Court:*   Yes, sir; I shall defer sentence one week from today, and it will depend entirely upon the action of the respondent as to what the court does."

The record contains other matter which it is not necessary to reproduce here.

Later the court pronounced judgment as follows:

"The judgment of the court here is that you pay a fine of $200—and the court will give you 48 hours within which to pay it—or stand committed to the county jail until such fine is paid, not to exceed 30 days. You may have 48 hours within which to raise it or take an appeal.

"*Mr. Hooper:*   May I ask an exception to the judgment of the court?

"*The Court:*   Yes, you may."

In his return to the writ of certiorari made by the circuit judge appears the following:

"(5) That said Edward N. Dingley filed his answer in writing which was read in open court, and a true copy of same is attached to the petition upon which said writ of certiorari was allowed, and is marked as 'Exhibit F.'

"(6) That in and by said answer a demand was made that interrogatories be filed, and the issue tried by a jury, which demands were denied and overruled by the court.

"(7) That the attorney for said Edward N. Dingley then prayed the court to continue and adjourn the proceedings until some day certain, to enable him to secure the attendance of witnesses and present proof, which prayer the court denied because, in the judgment of the court, the petitioner, who admitted the publication by him of the alleged contemptuous article, ought to be prepared to establish the truth thereof, or refrain from publishing the same, and because he had been allowed by the said order to show cause a reasonable time in which to prepare for the presentation of any proofs he desired to introduce, and because no showing under oath was made as a basis for said application; that the said Edward N. Dingley was then given an opportunity to produce any proofs or witnesses he had before the court at once, and, declining to do so, was adjudicated to be guilty of the contempt alleged as against him, and judgment to that end was thereafter entered upon the journal of the court."

Many interesting questions are presented and discussed by counsel, which we think it unnecessary to discuss here.

The right of the court to punish as for a criminal contempt an offender is no longer an open question in this State. The power is conferred by statute (1 Comp. Laws, § 1098; 5 How. Stat. [2d Ed.] § 12589). The courts possess the power independent of the statute. *Langdon* v. *Wayne Circuit Judges*, 76 Mich. 358 (43 N. W. 310); *In re Chadwick*, 109 Mich. 588 (67 N. W. 1071); *Nichols* v. *Judge of Superior Court*, 130 Mich. 187 (89 N. W. 691), and the many authorities therein cited. These cases are also authority

for the proposition that the issue is one for the court and not one for a jury.

An argument is made upon the part of the relator to excuse the publication of the article because it was aimed at Mr. Stewart as a private person, and not as circuit judge. We have no hesitancy in saying that the publication of the article, unless it is true, is in contempt of court and deserves punishment. We have already said that when an alleged offender has pleaded not guilty, the issue is to be tried by the court and not by a jury. It does not follow from this that it must be tried by the judge who is criticised. If the offense is committed in the presence of the judge, it would seem to follow that he should deal with the offender. While he doubtless has the legal right to proceed where the offense is not committed before him, we think it a better practice, as was done in *Re Chadwick, supra,* to call in another judge.

While we think Mr. Dingley should be punished, if he cannot purge himself of contempt by showing the truth of the publication, much as we dislike to interfere with the order of a court in proceedings of this nature, we cannot approve of the haste which characterized this proceeding. One of the earliest maxims with which the student of the law becomes familiar is that every alleged offender is entitled to his day in court before he is condemned. We quote from *Ferry* v. *Wheel Co.,* 71 Vt. 457 (45 Atl. 1035, 76 Am. St. Rep. 787):

> "It is a rule as old as the law, and never more to be respected than now, that no one shall be personally bound until he has had his day in court, by which is meant until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination; it is judicial usurpation and oppression, and never can be upheld where justice is justly administered."

This maxim was not observed, and for that reason the judgment of the court must be set aside and the proceeding dismissed without prejudice to the right to commence over again.

MCALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and STEERE, JJ., concurred.