WALTON LUNCH COMPANY *vs.* JOHN J. KEARNEY & others.

Suffolk.     January 6, 1920. — October 13, 1920.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Labor Union. Strike. Constitutional Law,* Jury trial in proceedings for contempt of court. *Equity Jurisdiction,* Proceedings for contempt. *Jury and Jurors.*

A strike of a labor union against a corporation, which is not in violation of any contract between the employer and the employed, is legal if it is caused by a breach of good faith and of square dealing on the part of an officer of the corporation in failing intentionally, without apparent excuse and without notice, to keep an appointment, deliberately made with representatives of the union at a conference touching their contractual relations with each other, for a further conference at a specified time and place.

If, in a suit by the proprietor of a restaurant against members and officers of a labor union which include his employees, it appears that, in furtherance of the strike, patrols uttering loud outcries passed up and down on a public sidewalk in front of the plaintiff's restaurant in such a way that nearly all persons seeking to enter the restaurant were incommoded and many were deterred and intimidated from attempting to approach it, and that, due to the conduct of the patrols, crowds, with the tacit approval of the defendants, acted in such a way as seriously to incommode all and to intimidate many persons who sought to pass by or to enter the restaurant, a final decree is warranted and proper, which perpetually enjoins and restrains the defendants "from interfering with the plaintiff's business by picketing in such a manner as to annoy, harass and intimidate the plaintiff's customers or intending customers, or his present employees or those desirous of entering his employment, or by inducing by any means whatever any employee now or hereafter under written contract of employment to violate said contract."

It was *stated* that, by an appeal from the final decree in the suit above described, questions as to the lawfulness in general of any kind of picketing and as to the interpretation of St. 1913, c. 690, were not raised.

As applied to a petition for an attachment for contempt in a suit in the Supreme Judicial Court charging that the defendants, members and officers of a labor union, had violated an injunction contained in the final decree in the suit and had committed certain crimes and other acts not criminal in their nature, St. 1911, c. 339, providing that a defendant in a proceeding for contempt, wherein the petition alleges a violation of an injunction which also would be a crime, shall have the right to trial by jury on the issue of fact, whether he committed the acts alleged to constitute the violation, is unconstitutional.

BILL IN EQUITY, filed in the Supreme Judicial Court on September 12, 1919, seeking to enjoin certain named individuals and

the "officers and members of a certain voluntary unincorporated association known as the Hotel and Restaurant Employees' International Alliance Union, Local No. 34," from interfering with the business of the plaintiff.

The suit was heard by *Pierce*, J., by whose order a final decree was entered on October 10, 1919, perpetually enjoining "the defendants, their agents and servants, . . . from interfering with the plaintiff's business by picketing in such a manner as to annoy, harass, and intimidate the plaintiff's customers or intending customers, or his [its] present employees or those desirous of entering his [its] employment, or by inducing by any means whatever any employee now or hereafter under written contract of employment to violate said contract." On October 14 the plaintiff appealed from the final decree.

The plaintiff also requested a report of the material facts in the case. The single justice filed such a report on October 25. Material facts found by him are described in the opinion. On October 27, the plaintiff filed a request for the following rulings of law:

"1. Upon the facts proved in this case the plaintiff is entitled to an injunction restraining the carrying on of the strike against the plaintiff by any means whatever.

"2. Upon all the evidence in the case the strike now being maintained by the defendants is an illegal one.

"3. The legality of the strike must be determined by the character of the demands presented to the plaintiff by the defendants.

"4. A strike for a purpose undisclosed to the employer is an illegal strike.

"5. The demands in this case were formulated by a vote of the union and there is no evidence that any officer had authority to alter those demands.

"6. If the demands were as stated in Exhibit 3 [not otherwise described or shown in the record], the refusal to grant them being the paramount purpose of going out on strike or one of the purposes for which the strike is maintained, it is immaterial what the immediate impelling motive which caused the men to leave their employment on September 5, 1919, was.

"7. Any picketing which is annoying, harassing, or intimidating to the plaintiff's customers or his present employees is illegal.

"8. All organized picketing or parading in front of the plain-

tiff's premises as well as any outcries by pickets or paraders is a nuisance and illegal.

"9. Any system of organized picketing in front of or near to the plaintiff's premises which interferes with the plaintiff's customers, employees, or business is illegal.

"10. A combination to persuade customers not to patronize the plaintiff is in the nature of a boycott and is illegal.

"11. Any combination to picket the plaintiff's restaurants which has the effect of intimidating, annoying, or harassing the plaintiff's employees under contract of employment with the plaintiff is illegal.

"12. Any inducing of employees under contract of employment to violate their contracts is illegal."

Upon the paper containing the foregoing requests, the single justice made the following indorsement: "The within requests for rulings were held for consideration when the final decree was filed and thereafter could not be given or refused."

On November 14, 1919, the plaintiff filed the petition for attachment for contempt, which is described in the opinion. The defendants filed a motion for a trial by jury under St. 1911, c. 339. The motion was heard by *Carroll*, J., who reported it to the full court for consideration of these two questions:

"1. Is St. 1911, c. 339, constitutional?

"2. If St. 1911, c. 339, is held to be constitutional, can a petition for contempt be heard by a single justice as to those allegations contained therein which do not charge crimes; or, if any of the allegations in the petition charge the commission of crimes, is the defendant entitled to a trial by jury under said statute as to all the allegations in the petition, even though some of them do not allege crimes?"

The case was submitted on briefs.

*H. A. Baker & J. J. Feely*, for the plaintiff.

*F. W. Mansfield & E. R. Mansfield*, for the defendants.

RUGG, C. J. This is a suit in equity by a corporation engaged in the restaurant business in Boston against named defendants as "officers and members of a certain voluntary unincorporated association known as the Hotel and Restaurant Employees' International Alliance Union, Local No. 34." The case was tried before a single justice, who entered a final decree in favor of the

plaintiff. This decree was simply one of perpetual injunction against certain acts and conduct. It did not declare whether the strike was legal or illegal. The plaintiff appealed and requested a report of the material facts. R. L. c. 159, § 23. In response to that request the single justice found that the strike was legal. A summary statement of the facts respecting that point is that in August, 1919, representatives of employees of the plaintiff sent to it for consideration a form of agreement, which if accepted would have established the principles of an absolute closed shop and which contained other provisions designed to effect changes in working conditions of its employees. On September 2, 1919, representatives of the employees and of the plaintiff met at the office of the latter and talked over the situation for about two hours. "At the conclusion of the discussion Mr. Walton [one of the representatives of the plaintiff] stated that the closed shop clause was important; that it was a change of policy, and that he wished time to think it over." It was then agreed that the conference should be renewed at the same place at a later specified time. At that time and place Walton, although in his office, "concealed that fact from those in charge of the office and from the representatives [of the employees] whom he had agreed to meet there."

The finding that this was the cause of the strike cannot be overturned. The evidence is not reported. It is not inconsistent with other facts found. Upon familiar principles it must stand.

The ruling that a strike for this cause was justifiable was right. This is not a case of a mere refusal to meet employees for discussion of demands for change of wages or working conditions. It is not a declination to confer with strangers about the subject. It is a plain case of a breach of good faith and of square dealing between man and man by intentionally failing without apparent excuse and without notice to keep an engagement deliberately made for further consultation touching their contractual relations with each other. It does not appear that the strike was in violation of the terms of any contract between the plaintiff and its employees.

All the further findings of fact, which describe the means whereby the strike was prosecuted, are in these words: "On the day following the vote to strike, and on every day and night thereafter until

September 12, 1919, the patrol, in pursuance of their appointed duties, passed up and down on the sidewalk adjacent to the principal entrance to the several restaurants, uttering loud outcries to the effect that the 'system' was unfair to labor and should not receive the public patronage. In making their apportioned round the patrol divided and made an approach to the entrance to the stores from either side. They met at the entrance and made their turns as near within the entrance as it was physically possible to do. As the distance to be covered in every instance was short, the turnings were so frequent that nearly all persons seeking to enter the restaurants were incommoded and many were deterred and intimidated from attempting to approach the restaurants. Attracted by the noise and the outcries of the patrol, large and sympathetic crowds gathered on the sidewalk near the restaurant, blocked the passage to it, hooted, jeered, hollered at, and pushed, struck, and withheld would-be customers to a degree seriously to incommode all and to intimidate many persons who sought to pass by or make an entrance to the restaurant. These acts of bystanders were not discouraged by the representatives of the employees, and I find they had their tacit approval."

The essential words of the final decree are that the defendants "are perpetually enjoined and restrained from interfering with the plaintiff's business by picketing in such a manner as to annoy, harrass, and intimidate the plaintiff's customers or intending customers, or his [its] present employees or those desirous of entering his [its] employment, or by inducing by any means whatever any employee now or hereafter under written contract of employment to violate said contract."

There is no error of law in this decree. Although not minute as to details, it unmistakably enjoins in every particular all the acts and conduct of the defendants set forth in the findings of fact as means by which the strike was carried on. The scope of the decree is coextensive with findings as to methods used to enforce the strike. Forms of interference with the plaintiff's rights which are not found to have been practised or threatened are not rightly included within the terms of an injunction. *Aberthaw Construction Co.* v. *Cameron*, 194 Mass. 208, 215. *Hitchman Coal & Coke Co.* v. *Mitchell*, 245 U. S. 229, 262. Questions as to the lawfulness of any kind of picketing, *Vegelahn* v. *Guntner*,

167 Mass. 92, and as to the interpretation of St. 1913, c. 690, are not raised upon this record.

The plaintiff's requests for rulings of law are not properly before us. It is not necessary to consider any question of practice connected therewith. So far as pertinent to issues raised on the record, the questions of law thereby sought to be presented have been dealt with. As applied to this record those numbered 7, 8, 9, 10, 11, 12 were in effect granted by the entry of the decree and the others ought not to have been granted. The final decree should be affirmed.

About three weeks after the entry of the final decree a petition for attachment for contempt against the defendants was filed. The petition contained allegations charging as violations of the injunction, the commission of certain crimes and other acts not criminal in their nature. The matter came on to be heard before another justice, who has reserved for our consideration in that connection the question whether St. 1911, c. 339, is constitutional. The pertinent part of the statute is in § 1, which is in these words: "The defendant in proceedings for violation of an injunction, where it appears from the petition filed in court alleging the violation, that the violation is an act which also would be a crime, shall have the right to trial by jury on the issue of fact only, as to whether he committed the acts alleged to constitute the said violation, and the said trial by jury shall take place forthwith, and if there is no sitting of a jury in the county where the contempt proceedings are to be heard, a venire shall issue to impanel a jury forthwith." It is provided by § 2 that the act shall not apply to proceedings in the Probate Court.

It is an essential element of a court that it possesses power to enforce its orders and to protect itself from having its authority flouted. It was said by Chief Justice Gray in *Cartwright's Case*, 114 Mass. 230, 238, "The summary power to commit and punish for contempts tending to obstruct or degrade the administration of justice is inherent in Courts of Chancery and other Superior Courts, as essential to the execution of their powers and to the maintenance of their authority, and is part of the law of the land, within the meaning of Magna Charta and of the twelfth article of our Declaration of Rights." This statement is complete, unequivocal and binding upon us. To undertake to amplify or

make it more clear by further discussion would be vain. Similar statements are to be found in the decisions of numerous other courts where the question has arisen. *State* v. *Matthews*, 37 N. H. 450. *People* v. *Tool*, 35 Col. 225, 248. *Middlebrook* v. *State*, 43 Conn. 257, 268. *In re Cooper*, 32 Vt. 253, 257. *Morrison* v. *McDonald*, 21 Maine, 550, 556. *State* v. *Doty*, 3 Vroom, 403. *State* v. *Galloway*, 5 Cold. 326, 331. *Ex parte McCown*, 139 N. C. 95, 122, 123. *State* v. *Judge of the Civil District Court for the Parish of Orleans*, 45 La. Ann. 1250, 1262. In the opinion of Mr. Justice Lamar in *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, at page 450, occurs this language: "While it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration whose judgments and decrees would be only advisory." It was said by Beasley, C. J., in *State* v. *Doty*, 3 Vroom, 403, 404: "A court would fail, of necessity, to accomplish the end of its institution, if it could not maintain order and enforce obedience to its precepts. The authority is derived from necessity, and the authority ceases only when such necessity ceases." These propositions are accepted as sound by the great weight of authority. Where the question has arisen it usually has been held that it is beyond the power of the Legislature to curtail jurisdiction of courts over contempts. There are many decisions to that effect. *State* v. *Morrill*, 16 Ark. 384, 391. *Cheadle* v. *State*, 110 Ind. 301, 309. *In re Hayes*, 72 Fla. 558, 562. *McDougall* v. *Sheridan*, 23 Idaho, 191, 223. *Joyce* v. *Everson*, 161 Ind. 440, 443. *Chicago, Burlington & Quincy Railway* v. *Gildersleeve*, 219 Mo. 170. *State* v. *Judge of the District Court*, 30 Mont. 193. *In re Bowers*, 89 N. J. Eq. 307, 309, citing *Flanigan* v. *Guggenheim Smelting Co.* 34 Vroom, 647, and *In re Thompson*, 15 Buch. 221, 236. *Hawes* v. *State*, 46 Neb. 149. *In re Shortridge*, 99 Cal. 526. *In re Chadwick*, 109 Mich. 588. *Nichols* v. *Judge of Superior Court of Grand Rapids*, 130 Mich. 187. The mere fact that the act is criminal is of no consequence. When a contempt of court happens at the same time to be a crime, that does not divest the court of power to deal with it as a contempt. *In re Debs, petitioner*, 158 U. S. 564, 593, 594. Some adjudications go only to the point of holding that constitutional courts cannot be affected

by legislation undertaking to limit a power so essential to the very nature of courts. *Bradley* v. *State,* 111 Ga. 168. *Hale* v. *State,* 55 Ohio St. 210. *Carter's Case,* 96 Va. 791. *State* v. *Frew,* 24 W. Va. 416. Even if that guarded statement be assumed to be a limitation and not a simple confining of the decision to the point before the court, it would dispose of the case at bar which is pending in the Supreme Judicial Court. This court is established by the people in the Constitution as a co-ordinate department of government. Articles 29 and 30 of the Declaration of Rights. Chapter 2, § 1, art. 13, and c. 3, art. 2 of the Constitution. It has been recognized as such from the beginning by the executive and legislative departments. It has been so declared in decisions of the court. *Russell* v. *Howe,* 12 Gray, 147, 153. *Dearborn* v. *Ames,* 8 Gray, 1, 14. Article by Chief Justice Gray in 21 Monthly Law Reporter (June, 1858), 65–83. See *Commonwealth* v. *Anthes,* 5 Gray, 185, 232, 236.

Trial by jury of the question whether a contempt of court had been committed would be a serious limitation of the power of courts. It has been so held whenever the point has arisen. It was said in *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, 450: "There has been general recognition of the fact that the courts are clothed with this power and must be authorized to exercise it without referring the issues of fact or law to another tribunal or to a jury in the same tribunal. For if there was no such authority in the first instance there would be no power to enforce its orders if they were disregarded in such independent investigation. Without authority to act promptly and independently the courts could not administer public justice or enforce the rights of private litigants." In the opinion in *In re Debs, petitioner,* 158 U. S. 564, 595, these words are found: "In order that a court may compel obedience to its orders it must have the right to inquire whether there has been any disobedience thereof. To submit the question of disobedience to another tribunal, be it a jury or another court, would operate to deprive the proceeding of half its efficiency." The two decisions last cited did not relate to the effect of a statute. The words quoted are sufficient to show that any statute requiring a jury trial upon contempt proceedings would be a substantial impairment of the inherent right of courts to maintain their authority. In *Carter's Case,* 96 Va. 791, in an elaborate opinion,

a statute providing for a trial by jury in contempt cases was held to be beyond the power of the Legislature. *In re Dingley,* 182 Mich. 44, 50, 51. There is no occasion for a jury trial to protect any real right, because, as was said by Mr. Justice Holmes in *United States* v. *Shipp,* 203 U. S. 563, at page 574, "The court is not a party [to proceedings for contempt]. There is nothing that affects the judges in their own persons. Their concern is only that the law should be obeyed and enforced, and their interest is no other than that they represent in every case."

Numerous cases have arisen where courts have referred to statutes which relate to the subject of contempt. None of them contain, so far as we have observed, any discussion of the constitutional question here presented, and hence it is not necessary to refer to them. There is a federal statute concerning contempts. Judicial Code, approved March 3, 1911, c. 231, § 268. See U. S. Rev. Sts. § 725. It, however, was held in *Toledo Newspaper Co.* v. *United States,* 247 U. S. 402, 418, that that statute "conferred no power not already granted and imposed no limitations not already existing" apart from the statute. There is nothing at variance with this in *Ex parte Robinson,* 19 Wall. 505, where the punishment undertaken to be imposed for contempt was manifestly different from any within the jurisdiction of a court dealing with contempt. The conclusion is inevitable from these decisions, among which so far as we are aware there is no dissent, and the reasons supporting them, which need not be further recited, that this statute is unconstitutional as applied to the case at bar.

The first question must be answered in the negative. It becomes unnecessary to consider the second question reported.

*Ordered accordingly.*