# SUPPLEMENT.

### OPINION OF THE JUSTICES TO THE HOUSE OF REPRESENTATIVES.

*Constitutional Law*, Opinions of the Justices, Separation of powers of government. *Contempt. Practice, Criminal,* Contempt proceedings. *Jurisdiction,* Contempt.

Under c. 3, art. 2 of the Constitution, the opinions of the Justices of the Supreme Judicial Court are not to be given to a branch of the Legislature upon an abstract legal proposition, not related to proposed legislation, as to the authority of the court under existing law respecting criminal contempt.

It is not within the authority of the Legislature under the Constitution to provide that, after a conviction for any criminal contempt in any court in the Commonwealth, the case may be appealed to the Supreme Judicial Court and there be retried on the facts; nor is it within the Legislature's authority to provide for a stay of execution of sentence during such an appeal without an order of court and for admission of the appellant to bail.

On May 5, 1943, the House of Representatives adopted the following order:

WHEREAS, There is now pending before the House of Representatives a certain bill providing for cases of criminal contempt, sometimes referred to as disciplinary or punitive contempt, an appellate procedure which is broader in scope than the usual procedure of re-examination of judgments in such cases upon writs of error, printed as House, No. 1558, a copy of which is herewith submitted; and

WHEREAS, If a broader method of review in such cases than that afforded by the technical procedure upon writs of error is available there are likely to be fewer cases of criminal contempt involving altercations between the court and counsel or other persons and resultant unfor-

tunate public misunderstanding of the judicial system and there is likely to be less chance of injustice to persons sentenced for criminal contempt; and

WHEREAS, Grave doubts have arisen as to the scope of the existing authority of the Supreme Judicial Court to deal with cases of criminal contempt under the Constitution and under section three of chapter two hundred and eleven of the General Laws and as to the extent of legislative authority to regulate appellate procedure for such cases; therefore be it

ORDERED, That the opinions of the Honorable the Justices of the Supreme Judicial Court be required by the House of Representatives on the following important questions of law:

1. (a) Has the Supreme Judicial Court authority, under the provisions of the Constitution and the provisions of section three of chapter two hundred and eleven of the General Laws or of any other law and in accordance with the principles recognized in the Opinion rendered by said Court in the matter of Keenan (1943 Advance Sheets, page 197[1]) or any other principles, and without any new legislation in aid of the judicial department or otherwise, to review or to provide for the review of criminal contempt cases in all or any respects under some adequate procedure which is broader in scope than proceedings upon writs of error?

(b) If the answer to the foregoing is in the affirmative, how may such procedure be made use of by persons found guilty of criminal contempt?

2. Is it within the authority of the legislative department under the Constitution to provide appellate procedure for such cases, substantially as proposed in House, No. 1558 submitted herewith, notwithstanding the provisions of Article XXX of Part the First of the Constitution of the Commonwealth or any other provision of said Constitution?

3. Is the provision in House, No. 1558 that an appeal in such cases shall stay the execution of the sentence with-

---

[1] 313 Mass. 186.

out order of court to that effect, within the power of the legislative department in view of the separation of legislative and judicial powers under said Article XXX?

On May 26, 1943, the Justices returned the following answer:

To The Honorable the House of Representatives of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions set forth in an order adopted by the House of Representatives on May 5, 1943, and transmitted to the Justices on May 13, 1943. A copy of the order is hereto annexed.

The questions submitted relate to a pending bill (printed as House, No. 1558) dealing with appellate procedure in cases of criminal contempt. The bill is entitled "An Act authorizing the right of appeal from a contempt adjudication and to a trial by jury," and is as follows: "Whenever any person shall be adjudged guilty of a criminal contempt and sentence is imposed he shall have a right of appeal to the supreme judicial court. This claim of appeal and a request for a report of the record and the material facts or a transcript of the material part of the stenographic record if any, together with a statement verified by affidavit of facts not appearing of record shall as soon as may be, be submitted to the judge who imposed the sentence who shall forthwith report the record, the transcript if any and material facts to be transmitted to the supreme judicial court with the claim of appeal and verified statement of the appellant. The appeal shall stay the execution of the sentence and the appellant shall be admitted to bail as provided for in criminal cases. After the entry of the appeal in the supreme judicial court the court may consider the matter on the record and other evidence transmitted or on its own motion or on application of the appellant appoint a commissioner to hear the parties, determine the facts and report to the court. Upon the report the supreme judicial court shall determine whether or not criminal contempt was committed and may affirm or dismiss the

proceedings or modify the sentence in such manner as justice may require."

The first question submitted is: "1. (*a*) Has the Supreme Judicial Court authority, under the provisions of the Constitution and the provisions of section three of chapter two hundred and eleven of the General Laws or of any other law and in accordance with the principles recognized in the Opinion rendered by said Court in the matter of Keenan (1943 Advance Sheets, page 197) or any other principles, and without any new legislation in aid of the judicial department or otherwise, to review or to provide for the review of criminal contempt cases in all or any respects under some adequate procedure which is broader in scope than proceedings upon writs of error? (*b*) If the answer to the foregoing is in the affirmative, how may such procedure be made use of by persons found guilty of criminal contempt?"

The Justices have no right to answer this question. Their duty with respect to rendering opinions to the legislative or executive department is defined by the Constitution, Part II, c. 3, art. 2, as follows: "Each branch of the legislature, as well as the governor and council, shall have authority to require the opinions of the justices of the supreme judicial court, upon important questions of law, and upon solemn occasions." "It has been frequently pointed out that the Justices ought not to give opinions under this provision of the Constitution unless required to do so by its terms." *Answer of the Justices*, 290 Mass. 601, 603. The "Justices are forbidden to go beyond the requirement of the Constitution. The Constitution not only limits their duty but bounds their right to express opinions." *Answer of the Justices*, 214 Mass. 602, 603. "While it is our duty to render opinions in all those cases in which either branch of the Legislature or the Governor and Council may properly require them, it is not the less our duty, in view of the careful separation of the executive, legislative, and judicial departments of the government, to abstain from doing so in any case which does not fall within the constitutional clause relating thereto." *Answer of the Justices*, 150 Mass. 598, 601.

The present question does not fall within this constitutional clause. The words of this clause "mean that the opinions can be required only when 'such questions of law are necessary to be determined by the body making the inquiry, in the exercise of the legislative or executive power entrusted to it by the Constitution and laws of the Commonwealth.' *Opinion of the Justices*, 126 Mass. 557, 566. 'By a solemn occasion, the Constitution means some serious and unusual exigency. It has been held to be such an exigency when . . . either branch of the Legislature, having some action in view, has serious doubts as to their power and authority to take such action, under the Constitution, or under existing statutes.' *Answer of the Justices*, 148 Mass. 623, 625–626." *Answer of the Justices*, 290 Mass. 601, 602. See also *Opinion of the Justices*, 269 Mass. 611, 618.

The present question does not relate to the power and authority of the Legislature to take the action proposed by the pending bill. This question relates rather to the authority of the Supreme Judicial Court to review or to provide for the review of criminal contempt cases. By this question advice is sought upon an abstract legal proposition as to the authority of the Supreme Judicial Court under existing law. But a "desire for information as to abstract legal propositions affords no ground for requiring an opinion of the Justices." *Answer of the Justices*, 217 Mass. 607, 611. The constitutional power and duty of the Justices to render opinions to a branch of the legislative department do not extend to making an exposition of existing law except so far as may be necessary in answering specific questions as to the power and authority of the Legislature to enact a pending bill. *Answer of the Justices*, 217 Mass. 607, 612–613. See also *Answer of the Justices*, 148 Mass. 623, 625–626. It may well be that advice as to the authority of the Supreme Judicial Court to review or to provide for the review of criminal contempt cases would aid the Legislature in determining the wisdom or expediency of proposed legislation. But questions bearing only upon the wisdom and expediency of proposed legislation — and not upon the

power and authority of the Legislature to pass such legislation — cannot properly be answered by the Justices. *Opinion of the Justices,* 301 Mass. 615, 617.

The clause of the Constitution requiring us to give opinions is, therefore, not operative with respect to the first question submitted, and we respectfully ask to be excused from answering it.

The second question submitted is: "2. Is it within the authority of the legislative department under the Constitution to provide appellate procedure for such cases, substantially as proposed in House, No. 1558 submitted herewith, notwithstanding the provisions of Article XXX of Part the First of the Constitution of the Commonwealth or any other provision of said Constitution?"

While the title of the pending bill includes the words "and to a trial by jury," the body of the bill contains no provision for such a trial, and the inclusion of these words in the title does not extend the scope of the bill. Consequently the bill does not authorize a trial by jury, and questions that would be involved if it authorized such a trial need not be considered.

The pending bill contains a provision that the "appeal shall stay the execution of the sentence and the appellant shall be admitted to bail as provided for in criminal cases." Since the third question submitted deals specifically with this provision, we answer the second question with respect to the bill considered as if this provision were not included therein, leaving the effect of this provision to be dealt with in answering the third question submitted.

Article 30 of Part I of the Constitution, referred to in the question, deals with separation of powers, and so far as here material provides that "the legislative department shall never exercise the executive and judicial powers, or either of them." This article must, however, be read with Part II, c. 1, § 1, arts. 3 and 4. With respect to these articles it was said in *Commonwealth* v. *Leach,* 246 Mass. 464, 470–471: "It is provided by c. 1, § 1, art. 3 of the Constitution that 'The general court shall forever have full power and authority to erect and constitute judicatories and courts of

record, or other courts' for the adjudication of all matters over which the Commonwealth validly can legislate. The only court established by the Constitution is the Supreme Judicial Court. . . . The Superior Court and all the district courts have been established from time to time by the legislative department of government pursuant to the power conferred by the Constitution. The jurisdiction of these courts may be 'modified, enlarged, diminished or transferred, in the same manner as the jurisdiction of all other courts subordinate to the Supreme Judicial Court.' . . . The General Court further is given full power and authority by c. 1, § 1, art. 4 of the Constitution to make 'all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions . . .' As a part of this comprehensive grant of power the legislative department of government may, according to its conceptions of the needs of the public welfare, fix and limit and change and transfer from one to another the civil or criminal jurisdiction of all such courts. It may abolish existing courts with the exception of the Supreme Judicial Court and erect others in their stead and distribute among them jurisdiction of all justiciable matters in its own wisdom. . . . The amplitude of these grants to the Legislature of power over courts is bounded by the other provisions of the Constitution." Among these other provisions is the provision of art. 30 of Part I of the Constitution with respect to separation of powers.

We are here concerned with the question whether these comprehensive grants of power to the Legislature extend to providing by statute for review of convictions for criminal contempt in the manner provided by the pending bill. The pending bill is limited in its application to convictions for criminal contempts as distinguished from convictions for civil contempts. But the pending bill makes no distinction between direct contempts, contempts committed in open court (see *Hurley* v. *Commonwealth*, 188 Mass. 443, 446; *Woodbury* v. *Commonwealth*, 295 Mass. 316, 323; *Dolan* v. *Commonwealth*, 304 Mass. 325, 337), and constructive contempts that are not so committed. The pending bill clearly is intended to apply to direct contempts as well as

to constructive contempts. Moreover, the appeal provided for by the pending bill is not limited to the review of questions of law arising in a proceeding for contempt, even including the question of law whether the evidence was sufficient to support the conviction. Review of facts as well as of law is provided for, and such review of facts is not limited to review of the facts bearing upon the jurisdiction of the court convicting for contempt. The pending bill contemplates review of the facts bearing upon the merits of the case. And the pending bill provides not merely for review of the evidence and facts that were before the trial judge but also for a retrial of the case. The "verified statement of the appellant" that is to constitute a part of the record on appeal can serve no purpose other than that of contradicting, or at least amplifying, the evidence before the trial judge and the report of material facts made by him. And the provision that the appellate court may "appoint a commissioner to hear the parties, determine the facts and report to the court," with the provision that upon "the report the supreme judicial court shall determine whether or not criminal contempt was committed," contemplates, in substance, a retrial of the case in that court upon matters that may or may not have been before the trial court. The ultimate question presented, therefore, is whether it is within the legislative power to provide that after a conviction for criminal contempt in any court in the Commonwealth, even though the contempt be a direct contempt, the case may be appealed to the Supreme Judicial Court and be retried in that court upon the facts.

The court of which we are members has recognized that it is within the comprehensive grants of legislative power to provide by statute for the review of questions of law arising in proceedings for criminal contempt by writ of error. In the first case in which it was decided that a writ of error would lie for this purpose, *Hurley* v. *Commonwealth*, 188 Mass. 443, the court said (pages 444–445): "The general rule at common law does not permit a proceeding for contempt to be revised by a higher court upon an appeal or writ of error . . . But in many of the States statutes

have been passed which have been construed to authorize appeals or writs of error in proceedings for contempt, and the tendency of judicial decision, in recent years, has been to open for revision rulings on questions of law in this class of cases as well as in others. In this Commonwealth the question whether a writ of error will lie never has been decided, although a case of this kind was entertained without question of the jurisdiction by counsel, or formal consideration of it by the court. *Telegram Newspaper Co.* v. *Commonwealth*, 172 Mass. 294. . . . If we have jurisdiction of these cases, it is under the R. L. c. 193, § 9, which is as follows: 'A judgment in a criminal case may be re-examined and reversed or affirmed upon a writ of error for any error in law or in fact.' The provision of R. L. c. 156, § 3, is broad and sweeping, in these words: 'The Supreme Judicial Court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided'; etc. . . . Considering together the statutes quoted above, we are of opinion that we do no violence to the general purpose of the Legislature, in holding that a sentence to punishment for a distinctively criminal contempt is a judgment in a criminal case, which may be re-examined upon a writ of error." The conviction in the *Hurley* case was for a constructive contempt, but there was no intimation in the opinion that a writ of error would not lie to review a conviction for a direct contempt.

The principle decided in the *Hurley* case was applied in the case of *Blankenburg* v. *Commonwealth*, 260 Mass. 369, to a writ of error to review a conviction for a direct criminal contempt in the Probate Court. The Supreme Judicial Court in holding that the writ of error would lie adopted the reasoning in the *Hurley* case and quoted at length from the opinion in that case, particularly the parts thereof in which the decision to that effect was based upon R. L. c. 193, § 9, and R. L. c. 156, § 3, later embodied in G. L. c. 250, § 9, and G. L. c. 211, § 3, respectively, saying that the "reasoning and result" in the *Hurley* case "are adopted without further discussion as governing the present case."

Page 375. These cases were followed in *Dolan* v. *Commonwealth*, 304 Mass. 325, involving a conviction in the Superior Court for a constructive criminal contempt. In resting upon statutory grounds the decisions in the *Hurley* case and in the cases following it that a writ of error would lie, the court necessarily recognized the existence of a power in the Legislature to provide by statute for review by writ of error of questions of law arising upon a conviction for criminal contempt, although the constitutional question of the existence of such power was not discussed. The *Hurley* case imports also that the legislative power extends to providing by statute for "appeals" as well as writs of error "in proceedings for contempt" for the purpose of reviewing "rulings on questions of law." Page 444. But the implication goes no farther and falls short of implying the existence of legislative power to provide by statute for retrial of the case in the appellate court in the manner provided in the pending bill.

In the *Blankenburg* case the court stated the nature of the power to punish for criminal contempt possessed by courts of record and of superior and general jurisdiction in these terms: "As such, they possess the inherent power summarily to investigate and to punish as for a public wrong those committing acts tending to obstruct or to degrade the administration of justice. Such power is essential to the performance of their functions, to the maintenance of their authority, and to their capacity to determine the rights of parties according to law. This power cannot be dispensed with in a court because it is necessary to the execution of all its other powers. It is a part of the law of the land" (pages 372–373), and added that a proceeding for criminal contempt such as was involved in that case "is in exercise of a jurisdiction with which the common law of this Commonwealth clothes all its courts." Page 373. In support of this statement of the nature of the power to punish for criminal contempt, the court relied upon *Whitcomb's Case*, 120 Mass. 118, and *Walton Lunch Co.* v. *Kearney*, 236 Mass. 310. In *Whitcomb's Case*, at page 120, the court said: "In Massachusetts, as in England, the

power to commit for contempt has always existed in the higher courts of justice, and is part of the law of the land, within the meaning of Magna Charta and of our Declaration of Rights," citing *Cartwright's Case*, 114 Mass. 230, where it was said at page 238: "The summary power to commit and punish for contempts tending to obstruct or degrade the administration of justice is inherent in Courts of Chancery and other Superior Courts, as essential to the execution of their powers and to the maintenance of their authority, and is part of the law of the land, within the meaning of Magna Charta and of the twelfth article of our Declaration of Rights."

In *Walton Lunch Co.* v. *Kearney*, 236 Mass. 310, the court said (pages 315–316): "It is an essential element of a court that it possesses power to enforce its orders and to protect itself from having its authority flouted . . . [quoting the statement in *Cartwright's Case* herein quoted]. This statement [in *Cartwright's Case*] is complete, unequivocal and binding upon us. To undertake to amplify or make it more clear by further discussion would be vain. Similar statements are to be found in the decisions of numerous other courts where the question has arisen . . . [citing numerous cases]. In the opinion of Mr. Justice Lamar in *Gompers* v. *Bucks Stove & Range Co.* 221 U. S. 418, at page 450, occurs this language: 'While it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. Without it they are mere boards of arbitration whose judgments and decrees would be only advisory.' It was said by Beasley, C.J., in *State* v. *Doty*, 3 Vroom, 403, 404: 'A court would fail, of necessity, to accomplish the end of its institution, if it could not maintain order and enforce obedience to its precepts. The authority is derived from necessity, and the authority ceases only when such necessity ceases.' These propositions are accepted as sound by the great weight of authority. Where the question has arisen it usually has been held that it is beyond the power of the Legislature

to curtail jurisdiction of courts over contempts. There are many decisions to that effect . . . [citing cases]." The court, however, recognized that some "adjudications go only to the point of holding that constitutional courts cannot be affected by legislation undertaking to limit a power so essential to the very nature of courts" (pages 316–317), but did not accept this view. See also cases collected in note 121 Am. L. R. 215–244. We do not attempt to analyze or summarize the numerous decisions in the State courts. It was stated some years ago (Rapalje, Contempt, page 13) — and later decisions afford no ground for a modification of the statement — that, in "the absence of a constitutional provision on the subject, the better opinion seems to be that legislative bodies have not power to limit or regulate the inherent power of courts to punish for contempt. This power being necessary to the very existence of a court, as such, the legislature has no right to take it away or hamper its free exercise. This is undoubtedly true in the case of a court created by the constitution . . . On the other hand, the Circuit and District Courts of the United States, being the creatures of congress, their powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction." This statement of principle is in accord with the decisions in Massachusetts herein referred to, even as applied to courts created by the Legislature.

Legal scholars have asserted that the conclusion that the power to punish for contempt is an essential attribute of a court has been based upon a misapprehension of the law of England with respect to punishment for contempt. However that may be, the conclusion as to the nature of the power to punish for contempt clearly declared and frequently reiterated is not to be regarded as overthrown by reason of a possible misapprehension of the law of England with respect to the exercise of this power. Indeed, even where such a misapprehension of the law of England has been recognized, it has been said without apparent disagreement that "there is no doubt that, since the early eighteenth century, the power to punish for contempt for

intrusions into the living process of adjudication has been an unquestioned characteristic of English courts and of the courts of this country." *Bridges* v. *California*, 314 U. S. 252, 279, 285, dissenting opinion.

The law with respect to punishment for contempt in the lower Federal courts has had an interesting history. The Constitution of the United States provides that the "judicial power of the United States shall be vested in one supreme court, and in such inferior courts as the congress may from time to time ordain and establish." Art. 3, § 1. The first act of Congress dealing with the judiciary provided for the Supreme Court and for inferior courts, and provided further that "all the said courts of the United States shall have power . . . to punish by fine or imprisonment, at the discretion of said courts, all contempts of authority in any cause or hearing before the same." Judiciary Act of 1789, § 17, 1 U. S. Sts. at Large, 73, 83. In 1831, however, a further statute was passed providing that the "power of the several courts of the United States to issue attachments and inflict summary punishments for contempts of court, shall not be construed to extend to any cases except the misbehaviour of any person or persons in the presence of the said courts, or so near thereto as to obstruct the administration of justice, the misbehaviour of any of the officers of the said courts in their official transactions, and the disobedience or resistance by any officer of the said courts, party, juror, witness, or any other person or persons, to any lawful writ, process, order, rule, decree or command of the said courts." A second section of the act provided for prosecution by indictment and punishment by fine or imprisonment or both. Act of March 2, 1831, c. 99, 4 U. S. Sts. at Large, 487. See now Judicial Code, § 268, 36 U. S. Sts. at Large, 1163.

In *Ex parte Robinson*, 19 Wall. 505, 510–511, the Supreme Court of the United States said: "The power to punish for contempts is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of jus-

tice. The moment the courts of the United States were called into existence and invested with jurisdiction over any subject, they became possessed of this power. But the power has been limited and defined by the act of Congress of March 2d, 1831. The act, in terms, applies to all courts; whether it can be held to limit the authority of the Supreme Court, which derives its existence and powers from the Constitution, may perhaps be a matter of doubt. But that it applies to the Circuit and District Courts there can be no question. These courts were created by act of Congress. Their powers and duties depend upon the act calling them into existence, or subsequent acts extending or limiting their jurisdiction. The act of 1831 is, therefore, to them the law specifying the cases in which summary punishment for contempts may be inflicted. It limits the power of these courts in this respect to three classes of cases." But in *Toledo Newspaper Co.* v. *United States*, 247 U. S. 402, 418–419, it was said that "there can be no doubt that the provision [of § 268 of the Judicial Code] conferred no power not already granted and imposed no limitations not already existing. In other words, it served but to plainly mark the boundaries of the existing authority resulting from and controlled by the grants which the Constitution made and the limitations which it imposed." By *Nye* v. *United States*, 313 U. S. 33, however, the *Toledo Newspaper Co.* case was expressly overruled, and it was recognized that the act of March 2, 1831, had substantially limited the power of the inferior courts of the United States to punish for contempt. Pages 47–52. The dissenting justices conceded that "this statute has curtailed an authority which federal courts exercised before its enactment" (page 53) but differed from the majority in the interpretation and application of the statute.

In the interval between the decision of the *Toledo News-paper Co.* case and its being overruled by the *Nye* case, *Michaelson* v. *United States*, 266 U. S. 42, was decided. That case involved a provision in the Clayton Act providing for trial by jury in certain classes of contempt cases. The statute in this respect was sustained — contrary to the de-

cision by the Supreme Judicial Court involving a substantially similar statute in *Walton Lunch Co.* v. *Kearney*, 236 Mass. 310. The precise point involved in these cases is not involved in the question now submitted to us. In the course of the opinion in the *Michaelson* case it was said (pages 65–66): "That the power to punish for contempts is inherent in all courts, has been many times decided and may be regarded as settled law. It is essential to the administration of justice. The courts of the United States, when called into existence and vested with jurisdiction over any subject, at once become possessed of the power. So far as the inferior federal courts are concerned, however, it is not beyond the authority of Congress (*Ex parte Robinson*, 19 Wall. 505, 510–511; *Bessette* v. *W. B. Conkey Co.*, 194 U. S. 324, 326); but the attributes which inhere in that power and are inseparable from it can neither be abrogated nor rendered practically inoperative. That it may be regulated within limits not precisely defined may not be doubted. The statute now under review is of the latter character. It is of narrow scope, dealing with the single class where the act or thing constituting the contempt is also a crime in the ordinary sense. It does not interfere with the power to deal summarily with contempts committed in the presence of the court or so near thereto as to obstruct the administration of justice, and is in express terms carefully limited to the cases of contempt specifically defined . . . If the reach of the statute had extended to the cases which are excluded a different and more serious question would arise."

These decisions and statements by the Supreme Court of the United States with respect to the limitation by Congress of the power of inferior courts of the United States to punish for contempt cannot be regarded as restricting the sweep of the statements in the opinions of the Supreme Judicial Court of the Commonwealth with respect to the power of the courts of this Commonwealth to punish for contempt without limitation by the Legislature. These decisions and statements of the Supreme Court of the United States involved solely the power conferred by the Constitution of the United States upon Congress to "ordain and establish" in-

ferior courts. That Constitution contains no such specific provision for the separation of powers as is contained in art. 30 of Part I of the Constitution of this Commonwealth. Moreover, the limitation imposed by Congress by the act of March 2, 1831, upon the power of inferior courts to punish for contempt did not relate to punishment for direct contempts — a power that was specifically recognized by the act. And in the *Michaelson* case the court said of the statute there under consideration that it was a statute of "narrow scope," that it "does not interfere with the power to deal summarily with contempts committed in the presence of the court or so near thereto as to obstruct the administration of justice," and that if "the reach of the statute had extended to the cases which are excluded a different and more serious question would arise." Page 66. The court, while stating that the fact that the power of inferior courts to punish for contempt "may be regulated within limits not precisely defined may not be doubted," stated that "the attributes which inhere in that power and are inseparable from it can neither be abrogated nor rendered practically inoperative." Page 66.

The cases in this Commonwealth herein referred to clearly stand for the proposition that even courts established by the Legislature, if of superior and general jurisdiction, possess the power to punish for contempt and that whatever authority the Legislature may have to regulate the exercise of this power — an authority that has been recognized as extending to providing for review of questions of law arising in cases of criminal contempt — the Legislature has no authority to abrogate such power or to render it inoperative. There is nothing in the decisions of the Supreme Court of the United States or elsewhere that warrants us in expressing an opinion that this proposition for which the cases in this Commonwealth stand is not the law of this Commonwealth.

It remains to consider whether the pending bill by providing for a complete retrial upon the facts by an appellate court of a conviction for criminal contempt is in conflict with the proposition for which the cases in this Common-

wealth stand. It is conceivable that there may be a difference in this respect between punishment for direct contempts, committed in the presence of the court, and punishment for constructive contempts not so committed, though we do not intimate that there is such a difference. Since the pending bill applies to direct contempts as well as to constructive contempts, it is unnecessary to consider whether there is such a difference. With respect to direct contempts, at least, we are of opinion that a provision for a complete new trial upon the facts by an appellate court is so far calculated to render inoperative the power of a trial court, of superior and general jurisdiction, to punish for contempt as to be beyond the constitutional authority of the Legislature, and that such a provision is prohibited by art. 30 of Part I of the Constitution of the Commonwealth, as an interference by the legislative department with the powers of the judicial department. We are of opinion that the existence of the power of courts to punish direct contempts without a complete new trial upon the facts by another court is, in the language of *Blankenburg* v. *Commonwealth*, 260 Mass. 369, 373, "essential to the performance of their functions, to the maintenance of their authority, and to their capacity to determine the rights of parties according to law," and that this "power cannot be dispensed with in a court because it is necessary to the execution of all its other powers." It is essential to the effective exercise of the power to punish for contempt, at least in the case of direct contempts, that punishment be imposed immediately, lest there be a cessation of the functions of justice. This conclusion has been stated in a striking manner by a judge, commonly recognized as one of the greatest State judges, in *Ex parte Summers*, 5 Ired. 149, 152–153: "From the very nature of contempts, and in order that the punishment may be efficacious, the punishment must be immediate and peremptory, and not subject to suspension by appeal at the mere will of the offender, nor by any proceeding in the nature of an appeal. Suppose one to come into court and curse and abuse the judge on the bench? Or, suppose a sheriff, with a writ in his hand,

in the presence of the court positively refuses to return it, so that the party's action will be discontinued? What would sentences for these contempts be worth, if the culprit could supercede them by appeal, *certiorari*, or writ of errors? Manifestly, nothing: and the authority of the court would really be contemptible, if it could be thus eluded and prostrated. There is no instance, therefore, of the reexamination of an order, committing or fining a person for a contempt, with the view of hearing the evidence, and trying the question *de novo*, nor directly to reverse or quash an order of commitment, or imposing a fine for an intrinsic insufficiency." While this statement may be subject to limitation in some details, in general it represents the law of the Commonwealth.

A judge presiding at a trial is charged with the heavy duty of seeing to it that nothing occurs in the court room to interfere with the administration of justice. And he must have power adequate for the performance of this duty. Punishment for direct contempt is the method provided by law. Such punishment is warranted only when essential to the orderly administration of justice. But the importance to the public of orderly administration of justice is too great to justify the denial by the Legislature to the courts of the power to punish for contempt because of the remote possibility that some judge may exercise the power unwisely. As herein pointed out, the Legislature is not authorized by the Constitution to deny this power to the courts.

It is to be observed that the conclusion here reached does not result in denying relief to a person convicted of criminal contempt, although relief is not afforded in the manner provided by the pending bill. The law undoubtedly provides relief against punishment for contempt by a court that has no jurisdiction to impose such punishment. See *Dolan* v. *Commonwealth*, 304 Mass. 325, 334, and cases cited. Review of questions of law arising in proceedings for contempt is authorized by statute and the validity of such a statutory provision has been recognized. *Hurley* v. *Commonwealth*, 188 Mass. 443. *Blankenburg* v. *Common-*

*wealth*, 260 Mass. 369. *Dolan* v. *Commonwealth*, 304 Mass. 325. And it may well be that the Legislature has authority to provide for an even more effective method of review of such questions of law. Furthermore, the constitutional provision for pardoning offences extends at least to some criminal contempts. *Opinion of the Justices*, 301 Mass. 615, 621.

We, therefore, answer the second question submitted "No."

The third question submitted is: "3. Is the provision in House, No. 1558 that an appeal in such cases shall stay the execution of the sentence without order of court to that effect, within the power of the legislative department in view of the separation of legislative and judicial powers under said Article XXX?"

In view of the negative answer to the second question submitted it may be unnecessary to answer the third question submitted. But the answer to this question is governed by the principles stated in answering the second question, and the same answer is required.

We, therefore, answer the third question submitted "No."

> FRED T. FIELD.
> CHARLES H. DONAHUE.
> HENRY T. LUMMUS.
> STANLEY E. QUA.
> ARTHUR W. DOLAN.
> LOUIS S. COX.
> JAMES J. RONAN.